United States Court of Appeals,

Fifth Circuit.

No. 92–4158

Summary Calendar.

Ibrahim SILWANY–RODRIGUEZ, Petitioner,

v.

IMMIGRATION and NATURALIZATION SERVICE, Respondent.

Oct. 26, 1992.

Petition for Review of an Order of the Board of Immigration Appeals.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Ibrahim Silwany–Rodriguez petitions for review of an order of the Board of Immigration Appeals denying his application for asylum and ordering his deportation to Nicaragua. Because we conclude that the board's decision was correct, we grant review and affirm.

I

Silwany–Rodriguez lawfully entered the United States in the company of his parents, at the age of twelve, in March 1980. He and his parents were admitted as B–2 "visitors for pleasure" and given permission to remain in the United States until June. On March 25, 1980, Silwany–Rodriguez's father, Ibrahim Rodriguez, Sr., applied to the District Director of the Immigration and Naturalization Service in Miami for political asylum. As a minor member of his father's family, Silwany–Rodriguez was included in the application as a "rider." That application was neither adjudicated nor withdrawn.[1] Subsequently, in 1987, Rodriguez, Sr. applied for political amnesty under 8 U.S.C. § 1255(a) (1987). That application was granted, and the Rodriguez family was given temporary resident status.

Silwany–Rodriguez remained in the Miami area with his family, graduating from high school

[1]Apparently the INS did not move to deport Nicaraguans during the Sandinista regime.

with a good grade point average and securing a job as an assistant store manager with the Circle K Corporation. In 1989, while employed with Circle K, he was arrested for his tangential role in a cocaine transaction. Silwany–Rodriguez was approached by the "main defendant" and asked if he knew anyone who was in the business of selling cocaine. He replied that he might, and proceeded to make a telephone call that put the main defendant in touch with a seller of cocaine. He never saw or handled any cocaine, was not involved in the transaction after he made the telephone call, and never received or expected to receive any financial remuneration for his participation. Silwany–Rodriguez pleaded guilty, cooperated fully with the prosecutor, and played a significant role in the conviction of eight other defendants.

Pursuant to his guilty plea, Silwany–Rodriguez was convicted in the United States District Court for the Southern District of Florida of conspiracy to possess with intent to distribute cocaine in September 1989. The district judge sentenced him to fifteen months of incarceration followed by a supervisory period of four years. The INS subsequently issued an order to show cause charging him with deportability in March 1990, and had his status as a temporary lawful resident of the United States terminated in October 1990.

At the hearing on the order to show cause in January 1991, the immigration judge found that Silwany–Rodriguez was deportable because of his conviction for an aggravated felony.[2] Silwany–Rodriguez informed the judge that he was requesting relief from deportation by resubmitting the unadjudicated political asylum claim that had been filed by his father in 1980, and at that time submitted an application for asylum to the judge dated January 1991.[3] At the hearing on the

---

[2] The felony that Silwany–Rodriguez was convicted of under the Controlled Substances Act constitutes an "aggravated felony" for purposes of the Immigration and Nationality Act. See 8 U.S.C. § 1101(a)(43) (1992).

[3] This resubmission or new submission is the basis for the parties' disagreement; while Silwany–Rodriguez argues that this resubmission is simply a continuation of the 1980 application, the INS asserts that it is in fact a new and wholly separate application subject to the 1990 amendments.

resubmitted claim in April 1991, the immigration judge heard, in addition to other evidence, testimony from Silwany–Rodriguez's father about the persecution to which he and his family were subjected in Nicaragua, and the dangers his son would likely face if he were forced to return there.[4] The immigration judge decided to grant Silwany–Rodriguez political asylum and to withhold deportation. Although the judge determined that Silwany–Rodriguez had been convicted of an aggravated felony after November of 1988 and that therefore 8 U.S.C. § 1158(d) would disallow a *new* application for political asylum, he reasoned that § 1158(d) was inapplicable to the unadjudicated 1980 application. He thus granted Silwany–Rodriguez asylum under the 1980 application.

The INS appealed the decision to the Board of Immigration Appeals, limiting the issue to whether § 1158(d) could act to bar Silwany–Rodriguez's request for political asylum. The board reversed the decision of the immigration judge and ordered deportation to Nicaragua. Relying on *Matter of B–,* Interim Decision 3164 (BIA 1991), it determined that Silwany–Rodriguez's resubmission of his 1980 application was actually a new application, and as such was subject to the provisions of § 1158(d). Since the resubmission constituted a new application, his petition was also barred by 8 C.F.R. § 208.14(c)(1), which requires that asylum applications filed after October 1, 1990, by aliens convicted of particularly serious crimes be denied. Silwany–Rodriguez initiated this Petition for Review by timely filing his notice of intent to appeal.

II

Considering the way in which this case developed, we address it both as a question of fact and as a question of law. To the extent it involves a question of law, this is subject to *de novo* review. *Liwanag v. INS,* 872 F.2d 685, 688 (5th Cir.1989). Such review, however, "is limited," and

---

[4]Rodriguez, Sr. was a member of the Liberal Party, which supported former President Somoza, and had business and social ties with many people in the Somoza government. When Somoza was ousted from power in July 1979 and the radical leftist Sandinista Party took control, many threats were made against Rodriguez, his property was confiscated by the government, and he was forced into hiding. With the help of his chauffeur, Rodriguez was able to get passports for himself and his family, and the group left Nicaragua for the United States in March 1980.

the court "accord[s] deference to the Board's interpretation of immigration statutes unless there are compelling indications that the Board's interpretation is wrong." *Campos–Guardado v. INS,* 809 F.2d 285, 289 (5th Cir.), *cert. denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987); *Zamora–Morel v. INS,* 905 F.2d 833, 838 n. 2 (5th Cir.1990); *Rojas v. INS,* 937 F.2d 186, 189 (5th Cir.1991). On review, an agency's construction of its own regulations is controlling unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

When questions of fact are presented, the court reviews the basis of the board's decision to determine whether its findings are supported by substantial evidence. *Rojas,* 937 F.2d at 189; *Zamora–Morel,* 905 F.2d at 838. "The substantial evidence standard requires only that the Board's conclusion be based upon the evidence presented and be substantially reasonable." *Rojas,* 937 F.2d at 189. Substantial evidence is a deferential standard, meaning that we cannot reverse the BIA simply because we disagree with the BIA's apprehension of the facts. *Id.* "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *American Textile Manufacturers Institute, Inc. v. Donovan,* 452 U.S. 490, 523, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981), quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). To obtain a reversal of the board's decision under this standard, the alien must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to arrive at his conclusion. *See INS v. Elias–Zacarias,* ––– U.S. ––––, ––––, 112 S.Ct. 812, 815–17, 117 L.Ed.2d 38 (1992). The evidence must not merely support the alien's conclusion but must compel it.

III

The issue in this case is whether the 1990 amendments to the Immigration and Nationality Act and the corresponding changes to the agency regulations, providing for mandatory denial of asylum and withholding of deportation to an aggravated felon, apply to petitioner. We hold that they

do and that Silwany–Rodriguez is therefore ineligible for relief from deportation.

Subsection (d) of 8 U.S.C. § 1158, which was added by the 1990 amendments, states that "[a]n alien who has been convicted of an aggravated felony ... may not apply for or be granted asylum." This statutory bar to asylum applies to applications made on or after November 29, 1990. Pub.L. No. 101–649, 515(b), 104 Stat. 4978 (1990). Silwany–Rodriguez contends that he was resubmitting his 1980 application as opposed to filing a new application when he submitted an asylum application dated January 1991 to the immigration judge at his hearing. The board found the application submitted to the immigration judge was in fact a new application, and the record contains substantial evidence supporting the board's finding.

The two applications are in fact separate and distinct documents, and both Silwany–Rodriguez and the immigration judge recognized that they represented separate applications. The immigration judge referred to the January application as "the application for political asylum dated ... January 5, 1991." Record at 78. In support of his January 1991 application, Silwany–Rodriguez submitted fingerprint cards and a biographic form, both of which are considered essential elements of an application for asylum. 8 C.F.R. § 208.3 (1991). In fact, between the January and April 1991 hearings, the office of the immigration judge sent a letter to Silwany–Rodriguez's counsel stating that to be complete and considered as "filed," the application had to be accompanied by these two forms.

The office of the immigration judge also sent Silwany–Rodriguez's January 1991 application to the State Department for an opinion letter, and described it as "an application for asylum on Form I–589" and stated that "[a] hearing on this application has been scheduled...." Record at 213. A review of the record reveals that it contains substantial evidence supporting the conclusion that Silwany–Rodriguez's January 1991 application was a "new" application, separate and distinct from the 1980 application submitted by his father. Accordingly, the board's finding that Silwany–Rodriguez submitted a new application must be upheld, and the mandatory denial provisions

of the statute and the regulations are applicable to that application.[5]

In addition, the BIA has issued a ruling on this point in *Matter of B–,* Interim Decision 3164 (1991), and has held that although the applicant had previously filed an asylum application with the INS, the subsequent filing of an application with the immigration judge brings it within the ambit of the present asylum regulations at 8 C.F.R. § 208 (1991).[6]  In that opinion, the board stated that an asylum application submitted to the immigration judge "is not a continuation or a mere updating of the application previously filed with the Service.  It is, in effect, a *new* application and is to be adjudicated pursuant to the present federal regulations applicable thereto." *Matter of B–,* Interim Decision 3164 (1991), slip opinion at 4–5.  This holding was based on an analysis of the structure, language, and purpose of the old and new regulations and on the policy behind the addition of the amendments disqualifying aggravated felons to the statute.  It cannot be said that the board's conclusion is plainly erroneous or inconsistent with the regulations or the statute.  Under the standard of deferential review guiding this court, the board's decision in this case must be upheld.

IV

In conclusion, we hold that there is no compelling indication that the board's interpretation of the applicable statute or regulations is wrong, and further find that the factual basis underlying the board's decision is supported by substantial evidence.  Therefore, the judgment of the Board of Immigration Appeals must be

---

[5]Silwany–Rodriguez additionally argues that even if the January 5, 1991 filing was a new application, the immigration judge in fact adjudicated the 1980 asylum application.  If this is what the immigration judge did, he was wrong.  The regulations require a previous application to be resubmitted and filed with the immigration judge, who must adjudicate the refiled application.

[6]The new asylum regulations, applicable to applications filed on or after October 1, 1990, require that "[a]n application for asylum shall be denied if:  (1) The alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community;  ...."  8 C.F.R. § 208.14(c)(1) (1991).  An aggravated felon is considered to have committed a particularly serious crime.

AFFIRMED.