**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-60655**
**Summary Calendar**
_____

**OTONIEL MEJIA,**

**Petitioner,**

**versus,**

**IMMIGRATION AND NATURALIZATION SERVICE,**

**Respondent.**

_____

**Petition for Review of an Order of**
**The Board of Immigration Appeals**
**(A91 473 614)**
_____

July 9, 1997

Before JONES, DeMOSS, AND PARKER, Circuit Judges.

PER CURIAM:[*]

Petitioner Otoniel Mejia appeals decision of the Board of Immigration Appeals ("BIA" or the "Board") in which the Board denied Mejia's request for relief. For the following reasons, we affirm the decision of the BIA.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

Petitioner Otoniel Mejia, a citizen of El Salvador, entered the United States without inspection prior to 1982. He later applied for legalization under the amnesty provisions of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359. He was granted temporary resident status, the first step in achieving legalization. *See* 8 U.S.C. § 1255a(a). On January 28, 1994, Mejia pleaded guilty in Dallas County, Texas to aggravated assault on a peace officer for striking a police officer in the nose thereby giving the officer a bloody nose. As a result of this felony conviction, his temporary resident status was terminated, and the Immigration and Naturalization Service (the "INS") placed him in deportation proceedings. He was charged with being subject to deportation because of his entry into the United States without inspection in violation of 8 U.S.C. § 1251(a)(1)(B).

Mejia petitioned for suspension of deportation, withholding of deportation, and political asylum. The INS contended that Mejia was ineligible for suspension of deportation because of his conviction for aggravated assault on a peace officer, a crime involving moral turpitude; it also contended that he was ineligible for political asylum and withholding of deportation because the aggravated assault was a serious crime constituting a danger to the community. The Immigration Judge ("IJ") agreed with the INS and ruled that Mejia was ineligible for

2

suspension of deportation and voluntary departure because his conviction was a crime of moral turpitude; the IJ also ruled that he was ineligible for political asylum and withholding of deportation because his felony conviction was a crime of violence and he constituted a danger to the community. He was ordered deported.

Mejia appealed to the BIA which agreed with the ruling of the IJ and denied his appeal. He now petitions this court for review of the BIA decision.

Before this court, Mejia complains that the BIA erred in concluding that he was not entitled to voluntary departure and suspension of deportation because Mejia's conviction for aggravated assault on a peace officer was not a crime involving moral turpitude. He further complains that the BIA erred in concluding that he was not entitled to political asylum and withholding of deportation because his conviction for aggravated assault on a peace officer was not a very serious crime.

**DISCUSSION**

BIA's Ruling Regarding Suspension of Deportation

An alien seeking suspension of deportation must prove physical presence in the United States for a period of not less than seven years and "that during all of such period he was and is a person of good moral character." *See* 8 U.S.C. § 1254(a)(1). An alien bears the burden of demonstrating eligibility for suspension

3

of deportation, and this court will uphold the BIA's finding that an alien lacked good moral character for purposes of suspension of deportation if the finding is supported by substantial evidence. *See Hernandez-Cordero v. INS,* 819 F.2d 558, 560 (5th Cir. 1987)(*en banc*). "The substantial evidence standard requires only that the Board's conclusion be based upon the evidence presented and be substantially reasonable." *Rojas v. INS,* 937 F.2d 186, 189 (5th Cir. 1991).

The BIA found that Mejia was deportable because his crime of aggravated assault upon a peace officer was a crime involving moral turpitude. *See* 8 U.S.C. § 1101(h)(3) (providing that an alien convicted of a crime involving moral turpitude cannot establish good moral character). Mejia complains that the BIA erred in reaching this conclusion because it relied upon *Matter of Danesh*, 19 I&N Dec. 699 (BIA 1988), in which the BIA held that a conviction in Texas for aggravated assault against a peace officer was a crime involving moral turpitude. Mejia argues that his case is distinguishable because the statute upon which the BIA relied in *Danesh* has been changed and was not the same statute to which Mejia pleaded guilty. Specifically, the statute to which Mejia pleaded guilty does not necessarily require a bodily harm element. We are unpersuaded by Mejia's argument.

"[A]n aggravated assault against a peace officer, which results in bodily harm to the victim and which involves knowledge

4

by the offender that his force is directed to an officer who is performing an official duty, constitutes a crime that involves moral turpitude." *Id.* at 673. Mejia pleaded guilty to "knowingly and intentionally caus[ing] bodily injury to Albert Pagan, . . . a peace officer in the lawful discharge of official duty, by striking [Officer Pagan] with his hand, when [Mejia] knew and had been informed that [Officer Pagan] was a peace officer." R. 188.[2] It is clear from the information to which Mejia pleaded guilty that he actually caused bodily harm to his victim. Moreover, Mejia struck Officer Pagan when, after Officer Pagan and another police officer observed Mejia looking into and attempting to gain entry into several parked vehicles and apartment windows, the officers approached him. R. 189-90. He, "without warning and immediately," struck Officer Pagan, drawing blood. *Id.* We, therefore, find that there was substantial evidence to support the BIA's decision and that its decision that Mejia's conviction constituted a crime involving moral turpitude was based upon the evidence presented and was substantially reasonable.

---

[2] Because Mejia pleaded guilty to an offense which embodied physical harm to the officer, *Hamdan v. INS*, 98 F.3d 183 (5th Cir. 1996), is distinguishable. In that case, this court held that an indictment for "simple kidnaping" did not necessarily reflect a crime of moral turpitude, because the facts stated in the indictment did not refute a familial relationship or indicate a ransom demand or the use of force. 98 F.3d at 189. Here, the actual commission of bodily injury was admitted.

Mejia next complains that the BIA erred in determining that his offense of aggravated assault of a peace officer was a particularly serious crime. An alien cannot qualify for withholding of deportation if it is determined that, after conviction for a particularly serious crime, he constitutes a danger to the community. *See* 8 U.S.C. § 1253(h)(2). Likewise, an alien's asylum application is subject to mandatory denial if the alien has been convicted of a particularly serious crime. *See* 8 C.F.R. § 208.14(d)(1). To the extent this issue involves a question of law, we review the decision of the BIA *de novo. See Silwany-Rodriguez v. INS,* 975 F.2d 1157, 1160 (5th Cir. 1992). Questions of fact are reviewed to determine whether substantial evidence supports the BIA's findings. *Id.*

In determining whether a conviction is for a particularly serious crime, the analysis involves such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and whether the type and circumstances of the crime indicate that an alien will be a danger to the community. *See Matter of B-,* 20 I&N Dec. 427 (BIA 1991). Once it is found that an alien has been convicted of a particularly serious crime, it necessarily follows that the alien is a danger to the community of the United States. *See id.* Crimes against persons

6

are more likely to be categorized as particularly serious crimes. *See Matter of Frentescu,* 18 I&N Dec. 244, 247 (BIA 1982).

As discussed *supra,* Mejia pleaded guilty to striking a police officer after Mejia "knew and had been informed that [Officer Pagan] was a peace officer," which was a crime against a person that constitutes a flagrant disregard for authority. There was substantial evidence to support the ruling of the BIA.

## CONCLUSION

For the foregoing reasons, the decision of the BIA is AFFIRMED.

7