Pedro **SOLIS–DAVILA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

No. 71-2620
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 1, 1972.

* ■ Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

Albert Armendariz, Sr., El Paso, Tex., for petitioner.

John N. Mitchell, Atty. Gen. of U. S., Dept. of Justice, Washington, D. C., Troy A. Adams, Jr., District Director, I.N.S., New Orleans, La., William S. Sessions, U. S. Atty., Hugh P. Shoulin, Asst. U. S. Atty., El Paso, Tex., for respondent.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

After a full hearing before a Special Inquiry Officer (Officer) of the Immigration and Naturalization Service, Pedro Solis-Davila (Petitioner) was ordered deported to Mexico under 8 U.S.C.A. § 1251(a) (1), on the charge that at the time of his last entry into the United States he was excludable as an alien who had been previously arrested and deported and had not received permission for re-entry from the Attorney General, as required by 8 U.S.C.A. § 1182(a) (17). The Board of Immigration Appeals upheld the deportation order, and having exhausted his administrative remedies, petitioner brings the present appeal. Finding no merit in any of the three separate challenges made to the Officer's findings and conclusions, we affirm.

Petitioner, a resident-alien, was admitted to the United States for permanent residency on October 22, 1956. He

was subsequently ordered deported by the Special Inquiry Officer for making an entry into the United States without inspection. That order was affirmed by the Board on June 13, 1970, and a petition for review was filed in this court. However, on September 11, 1970, while this petition to review the June affirmance was pending here, petitioner was apprehended on a charge of unlawfully aiding the transportation into this country of three aliens who had not been properly admitted, a violation of 8 U.S.C.A. § 1324(a) (2). On September 25, 1970, he pled guilty to this charge, and was sentenced therefor in United States District Court for the Western District of Texas. On November 10, 1970, the deportation hearing which is the subject of the present appeal was held. Subsequent to the hearing, but before any order was issued in this November hearing proceedings, the Service successfully moved this court to dismiss the appeal from the June affirmance of the first deportation order.

In the present appeal, petitioner asserts that the government failed to prove any of the three elements necessary to make its case: 1) that petitioner made an entry into the United States, 2) having previously been arrested and deported, and 3) without prior approval of the Attorney General.

The Officer's findings as to the first element were based upon admissions petitioner made to the Federal District Judge in the course of pleading guilty to the alien smuggling charge,[1] the separate depositions of the three Mexicans petitioner had aided in gaining illegal entry,[2] the testimony of the officer who took the depositions, and the testimony of the officer who apprehended Petitioner. These items together were clearly sufficient to establish that petitioner made an "entry." We are further satisfied that the depositions were not inadmissible hearsay. They were rather the precise type of prior statement whose use in deportation proceedings is specifically contemplated by 8 C.F.R. § 242.14(c).[3]

Petitioner's situation is not one akin to that described in the Supreme Court's decision in Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). The so-called *Fleuti* doctrine was designed to ameliorate the harsh result of expelling an alien solely on the basis of his "entry" into the United States where such an alien is otherwise a lawful permanent resident who has made no more than a short, innocent trip abroad. Such an alien is not to be deemed to possess the requisite intent to make an "entry", as that term is defined in 8 U.S.C.A. § 1101(a) (13),[4] because

1. The court's records show that on the occasion of his guilty plea, petitioner testified as follows:
   THE COURT: Well, the aliens paid you $20 each at the Plaza in Juarez, isn't that right?
   THE PETITIONER: No, they paid me on this side.
   THE COURT: Well, didn't they pay you $20 on the Mexican side and then when you picked them up and started out in the car they each gave you $20 more?
   THE PETITIONER: Yes, sir.

2. The depositions were to the effect that each of the three had paid money to the petitioner in Mexico to secrete them into the United States.

3. That regulation provides:
   *Use of Prior Statements.* The special inquiry officer, may receive in evidence any oral or written statement which is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing or trial.

4. That section provides:
   The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession

he has made no "meaningful interruption" of his residence. *Fleuti* at 452, 83 S.Ct. 1804. Petitioner's conduct during his sojourn southward illustrates precisely the activities for which *Fleuti* provides no relief. "[I]f the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would be regarded as meaningful." *Fleuti* at 462, 83 S.Ct. at 1812. A departure from the United States made for the express purpose of unlawfully smuggling several aliens into this country, followed by a re-entry to receive payment therefor, were both established in this case. Such a case involves a meaningful interruption of residency and is no less than an "entry" as the law defines that term.

■ Petitioner next asserts that the government failed to prove that he was "arrested and deported" within the meaning of 8 U.S.C.A. § 1182(a) (17)[5] since the pending deportation order was on appeal to this court at the time of his alleged departure, and therefore he could not have been lawfully deported. This contention overlooks the fact that petitioner's "departure," voluntary or otherwise, resulted in both a finalization of the deportation order[6] and its effectuation.[7] We thus conclude that the government adequately established two necessary elements of its case: Petitioner's deportation, and his subsequent re-entry.

■ Petitioner finally contends that the government failed to establish the third element of the case, *i.e.*, that at the time of the alleged re-entry Petitioner had not received permission from the Attorney General to re-enter. We find it unnecessary to consider whether the government's evidence as to this point was sufficient, because our reading of the applicable statute convinces us that the burden was upon petitioner to show that he had received the requisite permission, not upon the government to show its absence. The applicable statute, 8 U.S.C.A. § 1182(a) (17), permits the exclusion of all those "[a]liens who have been arrested and deported, . . . *unless* prior to their embarkation or reembarkation . . . the Attorney General has consented to their applying or reapplying for admission." (emphasis added). We agree with the rationale of the Ninth Circuit's decision in Espinoza Ojeda v. United States Immigration and Naturalization Service, 419 F.2d 183 (1969) wherein that court construed a similarly-constructed portion of the same statute[8] to mean that a petitioner could be presumed to be a member of the excluded class *unless* he assumed the burden of coming forward with some information to take himself out of the class.

was not voluntary: *Provided*, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

5. Pertinent text discussed below.

6. 8 U.S.C.A. § 1105a(c). (In part.)
An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.
8 C.F.R. § 3.4. (In part.)
Departure from the United States of a person who is the subject to deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

7. 8 U.S.C.A. § 1101(g).
For the purposes of this chapter any alien ordered deported (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

8. 8 U.S.C.A. § 1182(a) (14).

**428**

This is not only the most logical interpretation of the statute, it is also the only practical construction. The petitioner certainly knows whether the *unless* proviso is applicable in his case. It is no real burden to require him to assert that consent has been given and when and how that condition has occurred. In the record before us here, the Petitioner never asserted that he has either applied for or received the permission. Furthermore, he did not even object when counsel for the government stated before the Officer that he had himself inspected the petitioner's file and found it devoid of any request for the permission.

We conclude that the determination of deportability was valid, it having been "found by clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true."[9] The order appealed from is

Affirmed.