IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-60807

_____

MIGUEL LOPEZ DE JESUS,

                                        Petitioner,

versus

IMMIGRATION AND NATURALIZATION SERVICE,

                                        Respondent.

_____

Petition for Review of an Order of the
Board of the Immigration Appeals
_____

November 7, 2002

Before KING, Chief Judge, and JOLLY, and HIGGINBOTHAM, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    Petitioner, a lawful permanent resident, appeals the decision
of the Board of Immigration Appeals upholding the decision of the
immigration judge which found him excludable as illegally
reentering the United States after a three-day trip to Mexico.  It
ordered him excluded and deported from the United States.  We
affirm the Board's decision and in doing so hold that retroactive
reach of the IIRIRA amendment of the INA is constitutional.

I.

Miguel Lopez De Jesus, a citizen of Mexico, married Victoria Palacios, a citizen of the United States, and, on the basis of his marriage, was admitted to the United States as a permanent resident in 1995.

On May 27, 1996, the Immigration and Naturalization Service initiated exclusion proceedings against Lopez when he tried to return to the United States after a two to three-day trip to Mexico. The INS charged that Lopez was inadmissible under § 212(a)(6)(E) of the Immigration and Nationality Act,[1] because he sought to illegally bring an alien, Sylvia Rubio, into the United States.

Lopez filed a motion with the immigration judge, arguing that the exclusion proceedings against him should be terminated and that he should instead be placed in deportation proceedings[2] because he was a lawful permanent resident of the United States and because his May 1996 departure from the United States was not meaningfully interruptive of his otherwise unrelinquished domicile in the United States. In the alternative, Lopez argued that he should be granted discretionary relief under INA § 212(d)(11),[3] which allows the Attorney General to waive inadmissibility when the alien has

---

[1] 8 U.S.C. § 1182(a)(6)(E)(2001).

[2] Deportation proceedings would provide petitioner with more rights and protections than exclusion proceedings.

[3] 8 U.S.C. § 1182(d)(11)(2001).

2

assisted the alien's spouse in entering the United States unlawfully.

The immigration judge held a hearing to address Lopez's motion. Before taking testimony, the parties stipulated to numerous facts, including the following: Lopez went to Mexico on May 25th or May 26th of 1996 and upon his return to the United States, he was accompanied by Sylvia Rubio; both he and Rubio presented themselves to the immigration inspector for inspection; upon being asked by the inspector, Lopez presented his alien registration card and Rubio handed a driver's license and social security card belonging to a Maria Castenada to Lopez, who then handed the documents to the inspector; Lopez and Rubio were then directed to secondary examination where they were interviewed by immigration inspector Claudio Cruz; Rubio was not a United States citizen and was returned to Mexico; Lopez was placed in exclusion proceedings; Lopez obtained a divorce from Victoria Palacios on June 4, 1996 and at some point thereafter entered into a common law marriage with Rubio. The parties also stipulated to the fact that Lopez knew Rubio was not entitled to enter the United States.

After receiving evidence, the immigration judge denied Lopez's motion to terminate the exclusion proceedings; found Lopez excludable as charged; and found that Lopez was statutorily ineligible for a waiver of inadmissability under INA § 212(d)(11) in light of the amendments contained in the Illegal Immigration and

Reform and Immigrant Responsibility Act of 1996. He ordered Lopez excluded and deported from the United States.

On appeal to the BIA, Lopez argued that his trip to Mexico, which was "for the purpose of visiting his family, friends and his wife," did not meaningfully interrupt his presence, and thus, because he was not effecting an entry when he sought to return, he should not be in exclusion proceedings. He argued in the alternative that even if he were excludable, he should be allowed to apply for a discretionary waiver available to those who seek to smuggle members of their immediate family, even though the waiver for after-acquired spouses had been statutorily eliminated by the time he applied for it.

The BIA dismissed the appeal. Because the evidence demonstrated that Lopez's purpose in departing the United States was to help someone else enter illegally, Lopez's departure was not innocent, it meaningfully interrupted his presence, and he was properly in exclusion proceedings. Turning to Lopez's claim of eligibility for a waiver of inadmissibility pursuant to INA § 212(d)(11), the BIA concluded that because the waiver was limited to smugglers who had the qualifying relationship with the person they were assisting at the time, it was not available to Lopez because at the time he sought to smuggle Rubio into the country, he was still married to Victoria Palacios. The BIA also rejected Lopez's argument that because he eventually married Rubio, she was a qualifying individual for purposes of seeking the waiver, because

4

the IIRIRA had eliminated the waiver for after-acquired spouses. The BIA rejected Lopez's argument that the IIRIRA's amendment to INA § 212(d)(11) should not be applied retroactively.

## II.

As Lopez's exclusion proceedings commenced before April 1, 1997, IIRIRA's permanent "new rules" do not apply; rather, because the BIA's decision was issued on October 3, 2001, IIRIRA's transitional rules for judicial review apply.[4] This court has jurisdiction over Lopez's petition for review because it was filed within 30 days of the BIA's October 3, 2001, decision as required by § 309(c)(4)(C) of the transitional rules.[5]

We are authorized to review only the decision of the BIA, and not that of the immigration judge.[6] We consider decisions of the immigration judge "only to the extent they affect the decision of the BIA[.]"[7] In reviewing the BIA's decision, questions of law are reviewed *de novo*, according deference to the BIA's interpretation of immigration statutes.[8] This court also reviews *de novo* the BIA's interpretation and application of Supreme Court and Fifth

---

[4] *See* IIRIRA § 309(a), (c)(1) & (4); *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir. 1997).

[5] *See* IIRIRA § 309(c)(4)(C); *Ibrik v. INS*, 108 F.3d 596, 597 (5th Cir. 1997).

[6] *Ogvedumia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993).

[7] *Id.*

[8] *Silwany-Rodriguez v. INS*, 975 F.2d 1157, 1160 (5th Cir. 1992).

5

Circuit precedent regarding whether an alien made an "entry" into the United States as defined in INA § 101(a)(13).[9]  Findings of fact are reviewed to determine whether they are supported by "substantial evidence."[10]  We may not reverse the BIA's factual conclusions unless the evidence was "so compelling that no reasonable factfinder could conclude against it."[11]

### III.

Lopez argues that his visit to Mexico in May 1996 was brief, innocent, and casual and therefore that he did not effect an "entry" into the United States within the meaning of INA § 101(a)(13).

It is the petitioner's burden to prove that he comes within the statutory exception to the "entry" definition.[12]  In *Rosenberg v. Fleuti*,[13] the Supreme Court held that a resident alien does not effect an "entry" for purposes of INA § 101(a)(13) when he returns from an "innocent, casual, and brief excursion" outside the U.S.; instead, such an alien effects an entry only if he intended to depart in a manner "meaningfully interruptive" of his permanent

---

[9] *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996).

[10] *Id.*

[11] *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (citation omitted).

[12] *See Molina v. Sewell*, 983 F.2d 676, 678 (5th Cir. 1993).

[13] 374 U.S. 449 (1963).

residence.[14]  The Supreme Court set forth three factors to be considered in determining whether an alien had the requisite intent to effect a meaningful interruption of permanent residence status: (1) the length of the alien's absence from the United States; (2) whether the alien had to procure travel documents for the trip; and (3) the purpose of the visit, with an emphasis on whether the purpose was contrary to immigration policy.[15]  The *Fleuti* factors must be balanced carefully in deciding whether an "entry" under the Act has occurred.[16]

*Fleuti* has been applied in several cases in which deportation was based on the petitioner's involvement in alien-smuggling.[17]  In *Solis-Davila*, the petitioner left the United States with the express intent of smuggling Mexican aliens into this country.[18]  He executed the crime and then reentered the United States, where he received payment for his work.[19]  He pleaded guilty to alien smuggling and was sentenced.[20]  Concluding that Solis-Davila's

---

[14] *Id.* at 462.

[15] *Id.*

[16] *Carbajal-Gonzalez*, 78 F.3d at 199.

[17] *See Solis-Davila v. INS*, 456 F.2d 424 (5th Cir. 1972); *Vargas-Banuelos v. INS*, 466 F.2d 1371 (5th Cir. 1972); *Laredo-Miranda v. INS*, 555 F.2d 1242 (5th Cir. 1977); *Carbajal-Gonzalez v. INS*, 78 F.3d 194 (5th Cir. 1996).

[18] *Solis-Davila*, 456 F.2d at 427.

[19] *Id.* at 426.

[20] *Id.*

7

criminal intent permeated his trip southward, this court upheld the deportation order.[21]

In *Vargas-Banuelos*, a resident alien traveled to Mexico to pay a condolence call on a family member.[22] While there, four Mexicans asked him to help them enter illegally.[23] Vargas-Banuelos agreed, accepted payment, and arranged for someone to meet and assist the illegal aliens once in the United States.[24] Vargas-Banuelos then reentered the United States legally.[25] This court reversed the deportation order, weighing factors such as Vargas-Banuelos's brief trip, his lawful return to the United States, and his innocent state of mind at the time of his departure against the criminal activity in which he eventually engaged.[26] The court held that "[u]nder *Fleuti* and its progeny in this circuit, the failure of the Government to show a criminal purpose prior to petitioner's departure is fatal to its case."[27]

---

[21] *Id*. at 427.

[22] *Vargas-Banuelos*, 466 F.2d at 1372.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 1373-74.

[27] *Id*. at 1374.

In *Laredo-Miranda*, a lawful resident alien crossed into Mexico to have a meal with his girlfriend and her family.[28]  Although he traveled with a companion who intended to smuggle a group of illegal aliens into the United States, Laredo-Miranda had no such criminal intent upon departure.[29]  However, upon return, Laredo-Miranda discovered that he had forgotten his alien registration card and, rather than explain such to the border officials, Laredo-Miranda waded across the river with the aliens and guided them to a landing place.[30]

We upheld the deportation order, weighing Laredo-Miranda's short visit and innocent intentions upon departure against his wholly voluntary and active ferrying of illegal aliens.[31]  The panel distinguished the case from *Vargas-Banuelos*, noting that Vargas-Banuelos crossed and recrossed legally, whereas Laredo-Miranda was an active and essential participant in bringing illegal aliens into the country at the precise time of his covert crossing by way of the river.[32]  *Laredo-Miranda* concluded that such showed an intent

---

[28] *Laredo-Miranda*, 555 F.2d at 1243.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 1244-46.

[32] *Id.* at 1245.

to disrupt his status, even though his intent to smuggle the aliens was formed *after* his departure.[33]

In *Carbajal-Gonzalez*, Carbajal-Gonzalez, a legal alien who taught dance classes in Mexico and entered the United States many times by showing his immigration card, left the United States with his wife to attend a dance party in Mexico.[34] Carbajal-Gonzalez and another individual who Carbajal-Gonzalez thought was a documented alien, although without documents on his person at the time, crossed the border without inspection in order to buy beer in the United States and return to the party in Mexico.[35]

Reviewing the *Fleuti* doctrine and its progeny, the panel noted that a new factor was suggested in the balancing of factors: "a resident alien's *fully consummated* intent to participate actively in alien smuggling, whether formed prior to or after departure from the United States."[36] Applying those factors, it reversed the deportation order, concluding that the BIA overlooked Carbajal-Gonzalez's length of absence from the United States, the purpose of his trip, the purpose of his return, and the absence of any

---

[33] *Id.* at 1245-46.

[34] *Carbajal-Gonzalez*, 78 F.3d at 195-96.

[35] *Id.* at 196.

[36] *Id.* at 199.

evidence that Carbajal-Gonzalez formed a fully consummated criminal intent to secret illegal aliens into the country.[37]

In the present case, the Board agreed with the immigration judge that the evidence clearly showed Lopez went to Mexico with the main or sole purpose of bringing back Rubio, a person he knew could not lawfully enter the United States. To support its conclusion, the BIA relied on inspector Cruz's testimony and Lopez's sworn statement taken at the inspection interview, which stated that Lopez went to Mexico to bring Rubio back to the United States, that he knew it was illegal for her to reenter the United States, that he obtained United States documents for Rubio to use in reentering the United States, and that he knew alien smuggling was illegal. The BIA also noted Cruz's testimony that Rubio stated Lopez went to Mexico to bring her back to the United States. The BIA therefore concluded that Lopez's departure from the United States was not innocent and that he was properly in exclusion proceedings.[38]

Although Lopez states that his intent when he departed the United States was to visit his family and friends, he presented no evidence to this effect at the hearing. Moreover, as noted by the BIA, there was substantial evidence introduced at the hearing by the INS that Lopez's intent when he departed the United States was

---

[37] *Id.* at 199-201.

[38] *See Solis-Davila*, 456 F.2d at 426.

to bring Rubio back from Mexico to the United States. Lopez did not contradict this evidence, pleading the Fifth Amendment to questions regarding his intent when he left and how and when he procured the documents from Castenada.

Lopez makes much of the fact that he did not try to smuggle Rubio into the United States "surreptitiously or by evading inspection." However, as we have explained, there was substantial evidence that Lopez was trying to surreptitiously gain the entry of Rubio into the United States by using Castaneda's documents. To the extent that Lopez challenges the BIA's implicit determination that Cruz was credible, such a credibility determination may not be overturned unless the record compels it.[39]

Accordingly, Lopez failed to show to this court that the evidence was "so compelling that no reasonable factfinder could conclude against it."[40] The evidence shows that he failed to carry his burden of proving that he came within the statutory exception to the "entry" definition of INA § 101(a)(13) because he left the United States with the intent of smuggling an alien into this country and then acted upon his plan. The BIA's decision that Lopez was properly in exclusion proceedings is therefore affirmed.

IV.

---

[39] *See Chun*, 40 F.3d at 78 (holding this court cannot substitute its judgment for that of the BIA with respect to the credibility of a witness or ultimate factual findings based on credibility determinations).

[40] *Id.*

12

The final issue is whether retroactive application of the IIRIRA amendment to § 212(d)(11) of the INA is unconstitutional. Before the passage of the IIRIRA, the INA permitted the Attorney General, in his discretion and for humanitarian reasons, to grant a waiver of inadmissability to an alien who "encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law."[41]  The statute made an individual eligible for a waiver even when the familial relationship arose after the act of smuggling but existed at the time of the filing of the application for relief.[42]

IIRIRA amended this standard, however.  Rejecting *Matter of Farias*, § 351(a) of the IIRIRA amended the statute by requiring that the alien have smuggled "an individual who *at the time of such action* was the alien's spouse, parent, son or daughter . . . ."[43] The IIRIRA stated that its amendments, effective on September 30, 1996, modified the legal standard for "applications for waivers filed before, on, or after the date of the enactment of this Act."[44]

---

[41] *See* INA § 212(d)(11), 8 U.S.C. § 1182(d)(11) (West 1995).

[42] *See Matter of Farias-Mendoza*, 21 I.&N. Dec. 269, 1996 WL 139465 (BIA 1996).

[43] *See* IIRIRA § 351(a) (1996), 8 U.S.C. § 1182(d)(11) (West 1999) (emphasis added); *see also Matter of Farias*, 21 I.&N. 269, 281, 1997 WL 258945 (BIA 1997) ("The legislative history of that amendment shows that its specific purpose was to overrule the Board's precedent decision in this particular case.").

[44] *See* IIRIRA § 351(c) (1996).

The BIA held in the instant case that the amendment made by IIRIRA to relief under INA § 212(d)(11) applied retroactively, rendering Lopez ineligible for a waiver even though the amendment was made after the alleged smuggling occurred because at the time Lopez and Rubio tried to enter the United States, Lopez was still married to Victoria Palacios.

Lopez argues to this court that the retroactive application of the IIRIRA amendment violates his constitutional rights to fair notice and due process. He argues that, although Congress expressly made the amendment retroactive, its retroactive application violates the due process concerns recognized in *Landgraf v. USI Film Products*.[45] Lopez, relying on *United States v. St. Cyr*,[46] argues that these concerns are present in this case even though the relief in question is discretionary. He argues that the retroactive application of the IIRIRA amendment at issue is harsh and oppressive because when he and Rubio attempted to enter the United States, he thought he might be eligible for a waiver and because, if he is deported, he will be separated from his family, friends, and property in the United States.

---

[45] 511 U.S. 244, 265, 266 (1994).

[46] 533 U.S. 289, 325 (2001).

14

This court has not addressed the constitutionality of the retroactive application of INA § 212(d)(11).[47]  In *Landgraf*, the Supreme Court held that when a case implicates a statute enacted after the events in the suit, the court should first determine "whether Congress has expressly prescribed the statute's proper reach" and, if there is no such express command, then determine "whether the new statute would have retroactive effect."[48]  Here, Congress stated that the amendment should apply to petitions filed before, on, or after the effective date of the amendment, clearly giving it retroactive effect.  We must therefore determine if the retroactive application of the amendment is constitutional.

This court has upheld the constitutionality of retroactive application of other sections of the IIRIRA which Congress explicitly made retroactive.[49]  In *Gonzalez-Torres v. INS*, we cited with approval two extra-circuit decisions rejecting due process and equal protection challenges to the stop-time rule of § 304(a) of

---

[47] Lopez did not raise his due process claim in his appeal to the BIA. However, this court has concluded that when a petitioner's due process claim does not assert a procedural error correctable by the BIA, it is not subject to an exhaustion requirement.  *Anwar v. INS*, 116 F.3d 140, 144 & n.4 (5th Cir. 1997); *see also Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993) (not subjecting alien's due process claim to exhaustion requirement).

[48] *Landgraf*, 511 U.S. at 280.

[49] *See Moosa v. INS*, 171 F.3d 994, 1006-07 (5th Cir. 1999)(IIRIRA § 322); *see also Brown v. Apfel*, 192 F.3d 492, 497 (5th Cir. 1999) (stating that *Landgraf* provides little support for constitutional argument when Congressional intent to make a statute retroactive is clear).

the IIRIRA and § 309(c)(5),[50] which expressly made the IIRIRA amendment to § 304(a) retroactive.[51]  This court concluded that "[w]hile petitioners may have expected that they would be eligible for suspension of deportation, IIRIRA's amendment limited only their eligibility for discretionary relief; it did not infringe on a right that they possessed prior to its enactment."[52]  The *Gonzalez-Torres* court also expressed approval of the *Appiah* and *Tefel* courts' determinations that there is a rational basis for the new stop-time rule.[53]  The court described as correct the *Appiah* court's determination that Congress's rational basis for the rule was to remove an alien's incentive for prolonging deportation proceedings in order to become eligible for suspension.[54]

---

[50] 213 F.3d 899, 903 (5th Cir. 2000)(citing *Appiah v. INS*, 202 F.3d 704, 708-10 (4th Cir. 2000); *Tefel v. Reno*, 180 F.3d 1286, 1301-02 (11th Cir. 1999)).

[51] Before the enactment of the IIRIRA, § 244(a) of the INA provided the Attorney General with discretion to grant suspension of deportation to an alien who satisfied certain requirements.  One of the requirements was that the alien must have been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of his application for suspension of deportation.  The time an alien spent in deportation proceedings counted toward the physical-presence requirement.  *See Gonzalez-Torres*, 213 F.3d at 902.
    The IIRIRA repealed the suspension-of-deportation provision in INA § 244. Section 304(a) of the IIRIRA established a "stop-time rule" for determining an alien's eligibility for suspension of deportation or cancellation of removal. Section 304(a) provided that "`any period of continuous residence or continuous physical presence shall be deemed to end when the alien is served a notice to appear.'"  *Id.* (citing 8 U.S.C. § 1229b(d)(1)).

[52] *Id.* (citing *Appiah*, 202 F.3d at 709).

[53] *Id.* (citing *Appiah*, 202 F.3d at 709; *Tefel*, 180 F.3d at 1301).

[54] *Id.* (citing *Appiah*, 202 F.3d at 709).

16

The reasoning of *Gonzalez-Torres* extends to this case as the IIRIRA's amendment to § 212(d)(11) limited only Lopez's eligibility for discretionary relief and did not infringe on a right he possessed prior to its enactment.[55]   Moreover, Congress has a rational basis for the rule:  to deter the smuggling of aliens who are not immediate family members.

Petitioner cites *St. Cyr* for his proposition that the fact that the waiver is discretionary does not reduce constitutional concerns.   In *St. Cyr*, the Supreme Court addressed the retroactive application of § 440(d) of the Antiterrorism and Effective Death Penalty Act which repealed discretionary relief from deportation.[56] In *St. Cyr*, the Court found that it was likely that aliens had pled guilty, giving up certain rights, in reliance on the possibility of receiving a waiver.[57]   The Court viewed the guilty plea as a *quid pro quo*, and found it unfair for the government to get the benefit of the plea, and then retroactively take away the benefit that the alien had relied on in pleading guilty.[58]   The Court viewed this as a harsh retroactive effect.[59]

---

[55] *See Gonzalez-Torres*, 213 F.3d at 903.

[56] *St. Cyr*, 533 U.S. at 314-25.

[57] *Id.* at 322.

[58] *Id.* at 321-22.

[59] *Id.* at 325.

The statute in question in *St. Cyr* was not made expressly retroactive by Congress. Because application of the statute would have harsh retroactive effects, the Court declined retroactive application without a clear statement from Congress. It was in determining whether the statute would have a retroactive effect that the Court stated that the fact that it was a discretionary waiver at issue did not affect its conclusion.[60]

This case is distinguishable from *St. Cyr*.[61] Here the IIRIRA amendment was expressly made retroactive by Congress, and there was no comparable bargain with the government. Thus, based upon Congress's express intent to make the IIRIRA amendment to § 212(d)(11) retroactive and based upon the reasoning of *Gonzalez-Torres*, we reject Lopez's due process claim. The retroactive application of the IIRIRA amendment is not unconstitutional. The decision of the Board of Immigration Appeals is AFFIRMED.

---

[60] *Id.*

[61] *See also Sibanda v. INS*, 282 F.3d 1330, 1334-35 (10th Cir. 2002)(concluding that aliens seeking suspension of deportation could not benefit from the holding in *St. Cyr* because the statute in question was expressly made retroactive and because aliens failed to show what Government gained from their decision to forego the voluntary departure right granted to them).