# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 17, 2021

Lyle W. Cayce
Clerk

No. 20-61207

DONATIEN PIRES MPESSE,

*Petitioner*,

*versus*

MERRICK GARLAND, U.S. ATTORNEY GENERAL,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A213 327 889

Before ELROD, SOUTHWICK, and COSTA, *Circuit Judges*.

PER CURIAM:*

Due to alleged inconsistencies and implausibilities in the petitioner's testimony, the immigration judge made an adverse credibility finding and denied the petitioner relief. The Board of Immigration Appeals rejected all but three of the inconsistencies but upheld the adverse credibility finding based on those. We further thin the group of relevant inconsistencies.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-61207

Because we cannot determine whether the remaining valid evidence of inconsistent testimony would have convinced the immigration judge that the petitioner was not credible, we GRANT the petition for review and REMAND for a reevaluation of petitioner's credibility.

FACTUAL AND PROCEDURAL BACKGROUND

Donatien Pires Mpesse, a native and citizen of Cameroon, entered the United States at Laredo, Texas, on November 5, 2019, without a valid entry document. He told officials that he had been arrested and tortured because of his homosexuality. He explained that he had been "blinded by the prison police" during his March 8, 2015 arrest, which resulted in over a year's imprisonment. During his second arrest in 2018, also due to Mpesse's homosexuality, Mpesse suffered a head injury that required medical attention. Mpesse was determined to be inadmissible and therefore subject to expedited removal.

Mpesse gave a credible fear interview almost three weeks after he arrived in Texas. He reiterated that he was arrested on March 8, 2015, and on September 8, 2018. Describing the first arrest, Mpesse said that "[i]t is the festival of the woman, I was with my girlfriend of masculine sex, we forgot where we were and started to kiss." Mpesse continued to explain that "[t]he police stopped us, called us fags and then beat us and put us in [a] cell." He stated that he was imprisoned for a year and a half and that his partner died in prison during that time. He also said that "[t]hey hit me in the eye, my left eye and until now I can't see from that eye."

During the interview, Mpesse also described the events leading up to his second arrest. He said, "I was in my room making love to my [male partner] and the landlord came to give me my electric bill. The door was not closed tightly enough and he saw us naked and went yelling telling the neighbors come see the fags that are here." Mpesse continued that the police

eventually arrived and "started hitting the door saying they were going to break the door, [and they] did.  They started beating us, the neighbors were throwing stones and saying burn the [two] men making love, they deserved to be burned."  The police then took Mpesse to a cell, where he was kept for one day before he was beaten unconscious and taken to a hospital.  Mpesse was able to flee the hospital, before eventually making it out of Cameroon to the Ivory Coast and later (after a brief return to Cameroon) to Ecuador.

Mpesse was served with a notice to appear, charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  He admitted removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  On his I-589 application, Mpesse wrote that on March 8, 2015, he was arrested in a park "known as Bois Saint Anastasie.  My partner . . . and I went to the park to take a walk.  Some of the other people in the park saw us hugging and kissing while we were sitting on a park bench and called the police."  Mpesse added that "[w]hen the police arrived, people ran toward us shouting 'gay, gay, gay' while throwing things at us."  Regarding his eye injury, Mpesse wrote that "[o]ne doctor [in Cameroon] accepted to treat and operate on my eye, but the surgery did not fix my eye.  I still have blurred vision."  Referring to the September 5, 2018 incident, he wrote that his "landlord's son caught my new partner . . . and I making love.  We got up and locked the door but it was too late.  He told the neighbors, and many came to our door shouting 'open, open, we will burn you, we will crucify you.'"

Mpesse received a merits hearing on February 27, 2020, before an immigration judge ("IJ").  At the hearing, Mpesse again recounted the details of the 2015 arrest, testifying that the events took place in a park and that bystanders began throwing rocks at him and his partner.  Mpesse further testified that, once they were back at the police station, a police officer struck him in the left eye with a baton.  He explained that his vision became blurry

immediately and that he was in substantial pain.  When asked if he can now only see out of one eye, Mpesse responded, "Yes."  When asked about the 2018 arrest, Mpesse testified that "my partner and I were in a room making love and we forgot to lock the door.  So the landlord's son came to give us the electricity bill and he caught us in the act or saw us in the act."

After considering Mpesse's testimony and the documentary evidence, the IJ found that Mpesse was not credible.  Accordingly, the IJ ordered that Mpesse's applications for asylum, withholding of removal, and protection under the CAT be denied and that Mpesse be removed to Cameroon.  As justification for his adverse credibility determination, the IJ pointed to numerous inconsistencies and implausible accounts in the record.

Mpesse appealed to the Board of Immigration Appeals ("BIA").  The BIA did not adopt the IJ's credibility findings in their totality, stating that some of the alternative bases identified by the IJ were "speculative and not tethered to the evidentiary record."  The BIA nonetheless upheld the IJ's adverse credibility determination and dismissed Mpesse's appeal based on three areas of "significant inconsistencies": (1) the location of the arrest and the involvement of bystanders on March 8, 2015; (2) the details of Mpesse's eye injury and treatment; and (3) the identity of the individual who discovered Mpesse with his partner on September 5, 2018.

In view of these inconsistencies and based on the totality of the circumstances and all relevant factors, the BIA concluded that the IJ "did not commit clear error in finding that the respondent did not provide credible testimony."  Mpesse timely filed this petition for review.

## DISCUSSION

This court reviews the BIA's factual findings for substantial evidence and conclusions of law *de novo*.  *Orellana-Monson v. Holder*, 685 F.3d 511, 517–18 (5th Cir. 2012).  Credibility determinations are findings of fact, subjecting

such analysis to substantial evidence review. *Vidal v. Gonzales*, 491 F.3d 250, 254 (5th Cir. 2007).

Under the substantial evidence standard, this court may not reverse a factual finding unless the totality of the evidence "compels" such a reversal — the totality of the evidence must be "so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009). Because of this deferential review, "where the judge's credibility determinations are supported by the record, [this court] will affirm them even if [this court] may have reached a different conclusion." *Mwembie v. Gonzales*, 443 F.3d 405, 410 (5th Cir. 2006). It is the petitioner's burden to demonstrate that the evidence compels a contrary conclusion. *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005).

We search to ensure an adverse credibility finding is "supported by specific and cogent reasons derived from the record." *Wang*, 569 F.3d at 537 (quotation marks and citation omitted). The trier of fact must consider "the totality of the circumstances[] and all relevant factors" in making a credibility determination. 8 U.S.C. § 1158(b)(1)(B)(iii). Relevant factors include the applicant's "demeanor, candor, or responsiveness;" the "inherent plausibility" of his account; the "consistency between [his] . . . written and oral statements (whenever made and whether or not under oath; and considering the circumstances under which the statements were made)," the "internal consistency" of his statements, the consistency of these statements with the other evidence in the record, and "any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." § 1158(b)(1)(B)(iii).

The BIA upheld the adverse credibility finding based on three inconsistencies. Mpesse challenges all three of these findings. We review to see if substantial evidence supports them.

I.     *March 8, 2015 incident and circumstances*

Mpesse first argues that the IJ misread his credible fear interview regarding where he was arrested on March 8, 2015. He points out that the IJ stated that Mpesse said he was *at* the festival of the woman, even though the transcript of the credible fear interview shows that Mpesse said that March 8 "*is* the festival of the woman." This error was repeated by the BIA. The Government responds by mischaracterizing Mpesse's argument, stating that "Mpesse asserts that he was not inconsistent because he could have been at a festival in a park." Though this assertion is true, Mpesse never makes such a claim — he only told the asylum officer that March 8 is the festival of the woman.

Though "adverse credibility determinations cannot be based on speculation or conjecture, such findings will be afforded substantial deference [when they are] grounded in evidence in the record and where the [IJ] provides specific cogent reasons for [his or her] determination." *Mwembie*, 443 F.3d at 410. Here, neither the IJ's nor the BIA's determinations are based on evidence in the record, as Mpesse never said he was at the festival, and thus he never gave inconsistent statements regarding the location of his arrest. He only said that he was arrested in the park on a particular day. It therefore was not appropriate for the IJ, and in turn the BIA, to rely on Mpesse allegedly giving conflicting statements about the location of the arrest in making the adverse credibility determination.

The BIA's decision also references Mpesse's omission in the credible fear interview that bystanders threw rocks at him on the day of his arrest. Mpesse argues that the asylum officer who conducted the credible fear

interview failed to ask sufficient follow-up questions to develop the record. Though the significance of a failure to mention some aspect of a past event can vary widely, Mpesse was interviewed for almost three hours.[1]  The BIA and "IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." *Wang*, 569 F.3d at 538 (quoting *Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008)).

The IJ was entitled to find that Mpesse's failure to mention the bystanders had significance.  Nonetheless, the IJ and the BIA erred in finding that his statements about the location of the arrest undermined his credibility.

## II.    *Eye injury*

Regarding the eye injury, Mpesse argues that he never told the asylum officer that he was blinded, just that he could not see from that eye.  While Mpesse did not use the term "blinded" during his credible fear interview, he did say that he was "tortured and blinded by the prison police" in his sworn statement to the border patrol officers.

On his I-589 application, he wrote that "[o]ne doctor [in Cameroon] accepted to treat and operate on my eye, but the surgery did not fix my eye. I still have blurred vision."  In his merits hearing, he said that he could only see out of one eye, contradicting his claim of blurred vision.  He also gave seemingly contradictory testimony regarding his treatment.  After first testifying he had seen an eye doctor, he then said, "[w]ith all the treatments I have received then, there was no solution for my eye.  And in Cameroon, I

---

[1] Mpesse's credible fear interview does not appear particularly short to us, despite Mpesse's characterization of the "obvious brief nature of a response in a Credible Fear Interview."  He was initially questioned from 7:37 a.m. to 10:15 a.m., and a follow-up interview lasted seven minutes.  In total, Mpesse's credible fear interview lasted almost three hours.

never really went to see a specialist." Further, despite writing in his application that he underwent eye surgery, he testified that "I was taking medicine . . . there was a doctor who was talking about . . . doing surgery on me, but it didn't work out." As the Government points out, these statements are inconsistent.[2]

An adverse credibility determination "must be supported by specific and cogent reasons derived from the record." *Wang*, 569 F.3d at 537 (quotation marks and citation omitted). These inconsistencies are specific, cogent, and derived from the record. *See id.*

### III.  *September 5, 2018 incident*

Regarding the second arrest, there is no dispute that during his credible fear interview, Mpesse stated that he and his partner were discovered by the landlord, while in all subsequent accounts he stated that it was the landlord's son who discovered them. Mpesse argues that "[w]hile [his] statement to the asylum officer differs on one minor account, the remainder of the interview testimony is wholly consistent with the evidentiary record," as "[his] declaration, application for asylum, and testimony all specifically mention it was the landlord's son who interrupted."

The IJ, however, "may rely on *any* inconsistency or omission" to determine that the petitioner is not credible considering the totality of the circumstances, regardless of whether the inconsistency or omission goes to the heart of the applicant's claim. *Ghotra v. Whitaker*, 912 F.3d 284, 289 (5th Cir. 2019) (quotation marks and citation omitted). This court "defers to an

---

[2] Mpesse explained his failure to mention his elective eye surgery by arguing that the interviewer only asked him 15 questions about his persecution, making it too cursory of an interview to be relied upon for omission, especially when his declaration and application mentioned his elective eye surgery.

IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Avelar-Oliva v. Barr*, 954 F.3d 757, 767 (5th Cir. 2020). Though another factfinder may have come to a different conclusion, Mpesse has not pointed to any evidence that would compel this court to reverse the decision of the BIA and IJ, as the findings are supported by the record. *See Mwembie*, 443 F.3d at 410.

Mpesse also reurges his argument that because the inconsistency was not obvious, he "should have been afforded the opportunity to offer an explanation before the [IJ] relied on it." To support this argument, he relies on the BIA's decision in *Matter of B-Y-*, holding that "[i]n making an adverse credibility determination, the opportunity for explanation requires that an [IJ] not rely on inconsistencies that take a respondent by surprise." 25 I. & N. Dec. 236, 242 (BIA 2010) (quotation marks and citations omitted). The BIA also has indicated, though, that "[w]hen an inconsistency is obvious or apparent, it is not necessary to bring it to an applicant's attention." *Matter of Y-I-M-*, 27 I. & N. Dec. 724, 727 (BIA 2019). Additionally, a panel of this court recently stated that an "IJ is not required to give an applicant the opportunity to explain inconsistencies before reaching an adverse credibility determination." *Singh v. Wilkinson*, 838 F. App'x 109, 111 (5th Cir. 2021) (quotation marks and citations omitted); *see also Chen v. Mukasey*, 278 F. App'x 419, 420 (5th Cir. 2008) (rejecting alien's argument that he "was not provided with a meaningful opportunity to rebut or address the IJ's credibility concerns" where this court's "review of the record establishes that the IJ's findings that [the alien's] testimony is incredible is substantially supported by the record"). We find that panel's explanation persuasive and apply it here.

When determining if an inconsistency is obvious, the key question "is whether it is reasonable to assume that the applicant was aware of it and had

No. 20-61207

an opportunity to offer an explanation before the [IJ] relied on it." *Matter of Y-I-M-*, 27 I. & N. Dec. at 728. While the IJ may ask about the inconsistency, "[t]he Government may give the applicant an opportunity to respond through cross-examination." *Id.* The applicant's counsel "may also decide to elicit testimony on direct examination, or on redirect to clarify inconsistencies that are brought out during the hearing." *Id.*

Here, as stated by the BIA, the IJ did question Mpesse about the plausibility of his story. Though the Government did not question Mpesse specifically about the discrepancy, he had the opportunity to address it on either direct or redirect examination, yet he failed to do so. He also did not offer any explanation in his appellate brief to the BIA regarding his failure to address the discrepancy, nor does he offer any explanation in this petition for review. A petitioner's providing two different identities for the person who exposed him to the police is an "obvious inconsistency." *See Matter of Y-I-M-*, 27 I. & N. Dec. at 728.

In summary, we have upheld most but not quite all of the examples of inconsistent or incredible testimony that the BIA upheld. The BIA similarly rejected some of the examples found by the IJ, stating that it had "not relied on the alternative bases identified by the Immigration Judge for finding the respondent's testimony incredible, including the implausibility findings, as they are speculative and not tethered to the evidentiary record." Thus, we conclude there was some error in the BIA decision regarding credibility, adding to the errors the BIA had already found, requiring us to decide whether there is enough here to disturb the BIA finding.

We start with a reminder that our review is deferential. We already discussed that we will sustain the BIA's findings as to credibility if there is support in the record, even if we would have decided credibility differently. *See Mwembie*, 443 F.3d at 410. We are not the first panel of this court to

confront a mix of sustained and rejected credibility findings. We have upheld them when, for example, the improper grounds were not at the forefront, and there was "no realistic possibility" that the BIA would have reached a different conclusion absent consideration of the credibility finding we rejected. *See Wang v. Sessions*, 736 F. App'x 477, 481–82 (5th Cir. 2018). We accept that as a proper view of our role.

Here, the unusual facts are that at the two stages of review, there has been an ever-decreasing number of markers of incredible testimony. Though this court gives deference to the BIA on its factual findings, the BIA goes even further: an "Immigration Judge's factual findings in a credibility determination should be afforded 'even greater deference'" than the deference given to other fact findings by the IJ. *Matter of Y-I-M*, 27 I. & N. Dec. 724, 725 n.1 (BIA 2019); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)(stating that there must be "even greater deference to the trial court's findings [as to credibility]; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

In light of the fact that the critical role in deciding credibility is for the IJ, and because both the BIA and this court have found that the IJ erred in some of the evidence he relied on to find that the petitioner was not credible, we are not confident in a finding that there was "no realistic possibility" that the IJ and BIA would have found the petitioner credible on the remaining evidence. We vacate the decision that was already made not because we disagree that what remains as valid evidence of inconsistency is not enough to uphold the BIA and IJ. Instead, we vacate and remand because it is for the BIA and, if there is a further remand, for the IJ to re-evaluate whether the remaining inconsistencies are enough.

We GRANT the petition for review and REMAND to the BIA.

No. 20-61207

JENNIFER WALKER ELROD, *Circuit Judge*, dissenting:

As the majority opinion acknowledges, our precedent teaches that "*any* inconsistency or omission" can be relied on in making an adverse credibility finding "as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." *Wang v. Holder*, 569 F.3d 531, 538 (5th Cir. 2009) (quoting *Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008)); *see also ante* at 7.[1] Moreover, an adverse credibility finding must be upheld unless "it is plain that that no reasonable fact-finder could make such an adverse credibility" finding in light of the totality of the circumstances. *Wang*, 569 F.3d at 538 (quoting *Lin*, 534 F.3d at 167).[2]

In this case, the majority opinion agrees with two of the three inconsistencies found by the Board of Immigration Appeals and Immigration Judge. *Ante* at 1. The majority opinion also agrees with the finding of an omission. *Ante* at 7. Under our precedent, that means that there are three strikes against Mpesse's credibility—an omission regarding the bystanders at his 2015 arrest, an inconsistency regarding his eye injury, and an inconsistency regarding his 2018 arrest. *See Wang*, 569 F.3d at 538 (noting that "*any* inconsistency or omission" may be relied upon in making an adverse credibility finding (quoting *Lin*, 534 F.3d at 167)).

---

[1] *See also Mwembie v. Gonzales*, 443 F.3d 405, 410 (5th Cir. 2006) ("[W]here the [immigration] judge's credibility determinations are supported by the record, we will affirm them even if we may have reached a different conclusion . . . ."); *Lopez De Jesus v. INS*, 312 F.3d 155, 161 (5th Cir. 2002) ("[A] credibility determination may not be overturned unless the record compels it.").

[2] Contrary to the conclusion reached by the majority opinion, the standard of review is not whether we are 100% certain that the IJ and BIA would reach the same finding on remand. *Cf. ante* at 12. Rather, the question is whether the petitioner has shown that *no* reasonable fact-finder could agree with the IJ and BIA's conclusion that Mpesse was not credible. For the reasons explained above, this standard has not been met here.

No. 20-61207

On this record and under our binding precedent and the deferential standard of review that we must apply, this adverse credibility finding must be upheld and Mpesse's petition must be denied. Because the majority opinion fails to heed our precedent, I respectfully dissent.