IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40330

Summary Calendar
_____

ZHU YU CHUN

                              Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

                              Respondents.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
(A72 756 787)
_____

(October 26, 1994)

Before KING, JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:[*]

    Petitioner, Zhu Yu Chun ("Chun"), a native citizen of the

People's Republic of China, entered the United States without

inspection.  Respondents, the Immigration and Naturalization

Service ("INS"), charged her with deportability under 8 U.S.C. §

1251(a)(1)(B) and issued her a notice to show why she should not

_____

    [*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the court has determined
that this opinion should not be published.

be deported.  In the proceedings before the Immigration Judge ("IJ"), Chun conceded deportability but requested asylum and withholding of deportation.  The IJ found Chun not credible, and in the alternative, even if credible, not eligible for asylum or withholding of deportation.  On appeal, the Board of Immigration Appeals ("BIA") affirmed both the IJ's credibility finding and alternative holding.  Chun challenges the action of the BIA.  We affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Chun is a 37 year-old native and citizen of China who entered the United States without inspection on or around April 16, 1993.  She claims to have been fleeing the Chinese government who was persecuting her for violating China's birth control policy of one child per family.  Chun has five children.

Chun testified that the government began persecuting her in 1977 when she was six months pregnant with her third child.  The government tried to force her to have an abortion, and took her husband to a brigade to pressure him into aborting the child.  Her husband committed suicide while in the brigade.  Chun remarried in 1980 and had another child, her fourth, in 1981.  A few days after the birth of this child, Chun testified that some men from the government took her to a hospital and tried, unsuccessfully,[1] to sterilize her against her will.

---

[1]  The procedure was unsuccessful because it was attempted too soon after she had given birth.  Before Chun was allowed to leave the hospital several days later, Chun had to buy a bond which would be refunded when she returned in three months to be sterilized.  Chun never returned for the sterilization procedure.

Chun and her family moved to another village to evade the government. Then in 1984, she gave birth to her fifth child. She did not register this child with the authorities. Chun apparently had no further problem with the government until November of 1992, when her husband returned to their home village to visit his sick brother. The authorities detained Chun's husband and asked him if he was the father of Chun's fifth child. When he refused to answer, he was severely beaten, after which he admitted he was the father. Upon hearing of these events, Chun went into hiding. Chun testified that while she was in hiding, the government looted and ransacked her house and closed down her two clothing stores.

Chun was smuggled into the United States in April of 1993. She testified that if she returned to China, she believed she would either be put in jail or killed for violating the birth control policy, for illegally leaving the country, or for owing the government money. On these grounds, she requested asylum and withholding of deportation. After a hearing where the IJ observed Chun's demeanor and listened to her testimony, he determined that Chun was not credible. The IJ also found that even if Chun was credible, she had not established her eligibility for asylum or withholding of deportation. The BIA affirmed the IJ's decision on both grounds.

## II. STANDARD OF REVIEW

We are authorized to review an order of only the BIA, not the IJ. Adebisi v. INS, 952 F.2d 910, 912 (5th Cir. 1992). We

-3-

may review actions of the IJ only when they have some impact on the BIA's decision. Id. In this case, the BIA specifically adopted the credibility findings of the IJ; therefore, we may review the findings of the IJ.

Furthermore, we must use the substantial evidence test to review the BIA's factual conclusion that an alien is not eligible for asylum. Id. (citing Campos-Guardado v. INS, 809 F.2d 285, 290 (5th Cir.), cert. denied, 484 U.S. 826 (1987)). This same substantial evidence standard applies to the BIA's factual conclusion that an alien is not eligible for withholding of deportation. Id. (citing Zamora-Morel v. INS, 905 F.2d 833, 838 (5th Cir. 1990)).

Under substantial evidence review, we may not reverse the BIA's factual determinations unless we find not only that the evidence supports a contrary conclusion, but that the evidence compels it. INS v. Elias-Zacarias, 112 S. Ct. 812, 815 n.1 (1992); Silwany-Rodriguez v. INS, 975 F.2d 1157, 1160 (5th Cir. 1992). In other words, the alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it. Elias-Zacarias, 112 S. Ct. at 817; Silwany-Rodriquez, 975 F.2d at 1160.

Moreover, it is the factfinder's duty to make determinations based on the credibility of the witnesses. Vasquez-Mondragon v. INS, 560 F.2d 1225, 1226 (5th Cir. 1977). We cannot substitute our judgment for that of the BIA or IJ with respect to the credibility of the witnesses or ultimate factual findings based

-4-

on credibility determinations.  Id.  As we have previously made emphatically clear, "[w]e will not review decisions turning purely on the immigration judge's assessment of the alien petitioner's credibility."  Mantell v. INS, 798 F.2d 124, 127 (5th Cir. 1986).

### III.  DISCUSSION

After observing Chun's demeanor while testifying and comparing her live testimony with her written application for asylum, the truth of which she swore to, the IJ found that Chun was not credible.  In explaining his finding, the IJ emphasized five inconsistencies in Chun's story, which are summarized as follows.

First, Chun said in her asylum application that in 1977 while she was pregnant with her third child, the government detained her first husband to pressure him into aborting the child.  However, on direct examination, Chun stated that her husband was arrested because she hid from government officials when they came to look for her.

Second, Chun testified at the hearing that after her first husband committed suicide, the government officials discovered his body, dragged it outside, and then all ran away.  This is inconsistent with her statement in her asylum application that the government put his body on display to send a message to the community about the consequences of violating the birth control policy.

Third, Chun testified upon cross-examination that after her husband's death in 1977, she had no income and was treated poorly by the community and therefore took her children and went from town to town peddling fruit. This conflicts with her statement in the asylum application that she did not begin selling apples and fish until 1981, after she remarried in 1980.

Fourth, Chun testified that she had been hiding from the government because of her fear of being arrested for violating the birth control policy. This concept of hiding from the government is inconsistent with her actions of going to the government in 1987 and 1989 to obtain two government loans to start clothing shops.

Fifth, Chun claimed repeatedly that the government did not know about the birth of her fifth child in 1984. However, the government apparently detained and beat her second husband in 1992 because of this child. Also, Chun indicated in her asylum application that the government came to her home to speak with her husband about the child <u>as soon as</u> she gave birth in 1984.

We conclude that the IJ's finding that Chun was not credible is a reasonable interpretation of the record and therefore supported by substantial evidence. Certainly, the opposite conclusion, that Chun was credible, is not <u>compelled</u> by the evidence. Therefore, we may not reverse this finding. <u>Elias-Zacarias</u>, 112 S. Ct. at 812 n.1, 817; <u>Silwany-Rodriguez</u>, 975 F.2d at 1160. Furthermore, because it was the IJ's duty to determine the credibility of the witnesses, <u>Vasquez-Mondragon</u>, 560 F.2d at

-6-

1226, we will not reverse this decision, as it turns purely on the IJ's assessment of Chun's credibility.  Mantell, 798 F.2d at 127.

Without credible evidence, the BIA had no basis upon which to grant asylum or withhold deportation.  Because we find that Chun's lack of credibility is an adequate ground for affirming, we do not address the BIA's alternative holding that even if Chun were credible, she would not be eligible for relief.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the BIA.