**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-60400

_____

XI CHEN,

Petitioner,

versus

JOHN ASHCROFT, U S ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
(A77 924 834)

_____

August 7, 2002

Before DAVIS, DeMOSS and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner, Xi Chen ("Chen") appeals the Board of Immigration Appeals's ("BIA") decision

to affirm the Immigration Judge's ("IJ") denial of his application for asylum, withholding of

deportation, and protection under the Convention Against Torture and Other Cruel, Inhuman or

Degrading Treatment or Punishment ("CAT"). For the reasons stated herein, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Chen was born on January 19, 1982, in Tingtou village in China. While in China, he resided

[*]Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstance set forth in 5th CIR. R. 47.5.4.

with his mother and attended a public school in a nearby city. Chen's mother, who had been a member of an unregistered Christian "house church" for many years, introduced him to Christianity and he was ultimately baptized. Following his baptism, Chen returned to school, where he began leading Bible discussions with four of his friends in his dormitory room. On several occasions, the school's principal broke up the meetings and warned Chen against discussing Christianity on school grounds. Chen was also physically attacked by individuals who claimed to be government officials because of his practice of Christianity. After these incidents, Chen ceased holding religious meetings with his friends. A few weeks later, however, a government official came to Chen's home and issued a fine of 6,000 yen, allegedly for "spreading Christianity" and "ruining the reputation of the village." The school's principal also refused to give Chen his diploma because of Chen's religious meetings and his continued disobedience.

Chen finally decided to leave China. Chinese officials did not try to prevent him from leaving the country. He arrived in Miami, Florida in March 2000, without a visa or other valid entry documents. The Immigration and Naturalization Services ("INS") denied Chen entry into the United States pursuant to § 212(a)(7)(A)(i) of the Immigration and Nationalization Act ("INA").[1] Chen

---

[1]Section 212(a)(7)(A)(i) of the INA, provides:

Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission--

(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible.

8 U.S.C. § 1182(a)(7)(A)(i) (2000).

appeared before an IJ and admitted the charges against him.  He then  submitted an application for

asylum and withholding of removal.  He also sought protection under the CAT.[2]  The IJ denied the

application and the BIA affirmed.

STANDARD OF REVIEW

This court has authority to review only an order of the BIA, not the IJ.  Chun v. I.N.S., 40

F.3d 76, 78 (5th Cir. 1994).  We review factual findings of the BIA to determine if they are supported

by substantial and probative evidence in the record.  I.N.S. v. Elias- Zacarias, 502 U.S. 478, 481

(1992).  The BIA's ruling will be reversed only when the evidence is so compelling that no reasonable

factfinder could fail to find the requisite fear of persecution.  Id.  We accord deference to the BIA's

interpretation of immigration statutes, unless the record reveals compelling evidence that the BIA's

interpretation is incorrect.  Rojas v. I.N.S., 937 F.2d 186, 189 (5th Cir. 1991).

DISCUSSION

Section 208(a) of the INA, 8 U.S.C. § 1158(a) (1999), authorizes the Attorney General to

grant asylum to any alien whom the Attorney General determines to be a "refugee."  Under the INA,

a "refugee" is defined as a person who is unable or unwilling to return home because of "persecution

or a well-founded fear of persecution" on account of race, religion, nationality, membership in a

particular social group, or political opinion.  8 U.S.C. § 1101(a)(42)(A).  The "well-founded fear of

persecution" standard involves both a subjective genuine fear of persecution and an objective

reasonable possibility of persecution.  I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987).

---

[2]Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, Art. 3, 23 I.L.M. 1027, 1028, *ratified by* United States, Oct. 21, 1994, 34 I.L.M. 590, 591 (1995) (stating that "No State Party shall expel, return ("refouler") or extradite a person to another State where there are *substantial grounds* for believing that he would be in danger of being subjected to torture.") (emphasis added).

Chen does not have to prove that the persecution will probably occur in order to establish that his fear is objectively reasonable. Instead, he must only show a reasonable possibility of persecution. Cardoza-Fonseca, 480 U.S. at 440. Even if Chen meets these requirements and is classified as a refugee, however, the Attorney General is not required to grant him asylum. Instead, a finding that Chen qualifies as a refugee does no more than establish that the Attorney General may exercise his discretion to grant asylum. Id. at 428 n.5. Such a showing can be made by the alien's own testimony, without further evidence, if it is consistent, detailed, credible, and coherent. Abdel-Masieh v. I.N.S., 73 F.3d 579, 584 (5th Cir. 1996).

To establish a claim for withholding of deportation, Chen must satisfy the standard set forth in 8 U.S.C. § 1231 (b)(3) (2000). This section provides in germane part:

> [T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

§ 1231 (b)(3)(A). Claims for withholding of deportation are subject to a higher evidentiary standard then claims for asylum, requiring an alien to demonstrate a "clear probability" that he will be persecuted if removed. Castillo-Rodriguez v. I.N.S., 929 F.2d 181, 185 (5th Cir. 1991).

With regard to his CAT claim, Chen must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16 (c)(2) (2001). The burden of proof to establish eligibility for a withholding under the CAT, like the burden for establishing a withholding of deportation claim under the INA, is higher than the burden imposed on an asylum application. Najjar v. Ashcroft, 257 F.3d 1262, 1303 (11th Cir. 2001) ("The burden of proof for an applicant seeking withholding of removal under the Convention, like that for an applicant seeking withholding of removal under the statute, is higher than the burden imposed on an

4

asylum applicant.").

The BIA determined that Chen was not entitled to asylum or withholding of removal, because he failed to establish that he was subject to past persecution, or that he possessed a well-founded fear of future persecution. It believed that Chen had been harassed or intimidated in China for Christian proselytizing in his school. However, it concluded that this mistreatment fell short of persecution. Furthermore, the BIA found that Chen did not demonstrate a well-founded fear of future persecution because it determined that, although the record contains evidence corroborating Chen's statements regarding the restrictions placed on persons practicing non-regulated religion in China, the record failed to demonstrate that someone in Chen's position would suffer persecution for practicing his religion. The BIA stated that Chen was harassed only when practicing his religion on the property of the state-run school, and that he was free to practice his religion off-school grounds. In addition, the BIA agreed with the IJ that Chen had not shown that it is "more likely than not" that he would be persecuted on account of one of the grounds specified in the INA. Therefore, it concluded that Chen was not entitled to protection under the CAT.

Chen first challenges the BIA's conclusion that he was admonished for praying at a public school. He argues that in China, the State controls every aspect of a citizen's life, be it economic, social, personal or religious. Chen claims that there is no separation of church and state because the State does not allow any philosophy, idea, group, or individual to separate or deviate from the communist party line.[3] He claims that the reason he was persecuted had nothing to do with the

---

[3]Chen submitted a copy of the 2001 Country Report for China the week prior to the date oral argument to this court was to take place. However, because the report was not considered by the BIA when it rendered its decision, we are precluded from considering the report on appeal. 8 U.S.C. § 1252(b)(4)(A) (1999) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based").

location of his religious meetings. Rather, it was the mere fact that he wanted to continue to share his Christian beliefs and the Chinese government was threatened by his actions. Thus, Chen maintains that he was a victim of past persecution on account of his religious beliefs and that his fear of future persecution is well-founded.

Chen avers that the BIA employed the use of speculation in stating that Chen "was only prevented from reading the Bible in his dormitory and could have gone to an area outside of his school to meet with his friends to discuss the Bible." He asserts that nowhere in the record of the proceedings did he claim that he could have gone elsewhere to hold his Bible discussions. Thus, Chen concludes that the BIA based its position on information that was not part of the record.[4]

The Government challenges Chen's argument that there is no separation of church and state in China. It concedes that Chen did not claim that he could go elsewhere to hold Bible study meetings. However, the Government states that the evidence establishes that house gatherings are permitted. It claims that this evidence supports the BIA's findings that Chen could have gone off-campus to participate in religious meetings with his friends. In any event, the Government argues that because Chen had the burden of proof on this issue, the BIA properly could view any ambiguities in the record regarding off-campus circumstances as a failure by Chen to carry that burden.

The Government also argues that while Chen asserts that he was persecuted on account of his religious beliefs, the evidence does not support such an assertion. Although it is true that Chen

---

[4]In addition to his other claims, Chen also challenges the IJ's conclusion that he did not provide a credible account of his departure from China. Because the BIA did not take issue with Chen's credibility with regard to any portion of his testimony, Chen's argument regarding the IJ's characterization and questioning of certain aspects of his testimony cannot be reviewed by this Court. Castillo-Rodriguez, 929 F.2d at 183 ("This Court is authorized to review only the order of the Board, not the decision of the immigration judge.").

was fined, hit, kicked, and slapped, the Government maintains that he was not badly harmed. It recognizes that the treatment Chen received may have been offensive, however, it maintains that the BIA was not compelled to hold that such mistreatment constituted persecution. See Ghaly v. I.N.S., 58 F.3d 1425, 1431 (9th Cir. 1995) (holding that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive"). At most, the Government claims that it can be said that Chen was harassed and intimidated, but harassment does not amount to persecution. See Id. Therefore, it concludes that the BIA acted as a reasonable factfinder when it determined that Chen had failed to meet his burden of showing past persecution.

With respect to future persecution, the Government states that Chen may assert that he has a subjective fear of future persecution in China, however, he has not shown that this fear is objectively reasonable. An alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Faddoul v. I.N.S., 37 F.3d 185, 188 (5th Cir. 1994) (internal quotations and citation omitted). The Government claims that there is no indication in the record that either Chen or his mother suffered any type of harassment or intimidation for their participation in the home gatherings. The Government avers that it was only while Chen was on the public school campus that he was forbidden from practicing his religion, which does not constitute persecution in absence of evidence establishing that Chen could not have gone off campus to study the Bible.

Chen's claim of past persecution is based on the Chinese government allegedly physically intimidating him, withholding his diploma, and levying a fine against him. While the term "persecution" under the INA is by no means well-defined, the BIA has provided some insight into the working parameters of this term:

The infliction of suffering or harm, under government sanction, upon persons who

7

differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.

Abdel-Masieh, 73 F.3d 583 (quoting Matter of Laipenieks, 18 I & N Dec. 433, 456-457 (BIA 1983) (citations omitted)). Here, although the Chinese government's actions may constitute intimidation and harassment, they do not rise to the level of extreme conduct necessary to compel a finding of past persecution. See Ghaly, 58 F.3d at 431; see also Rojas, 937 F.2d at 189-90 (5th Cir. 1991) (affirming the denial of asylum to an applicant who was arrested, beaten, tortured, and later fired from his job and denied other employment by the Nicaraguan government).

It is equally apparent that Chen has failed to establish a well-founded fear of persecution. While in China, Chen attended house church services with his mother and never experienced any intimidation or received any fines, prior to holding Bible discussions in school. Moreover, the principal only forbade him from meeting with his friends on school grounds. Presumably, he was free to meet with them privately away from school. In addition, the Chinese government permitted Chen to leave China using a passport and travel documents containing his name and picture. Thus, Chen cannot reasonably contend that he is afraid that he will be harmed because of his illegal departure from China. Given these facts, Chen has failed to show that the evidence presented was so compelling that "a reasonable factfinder would have to conclude that the requisite fear of persecution exist[s]." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Chen's claims for CAT protection and withholding of deportation were also properly denied.

As stated previously, the burden of proof for CAT and withholding of deportation claims is higher than that for asylum. <u>See</u> <u>Cardoza-Fonseca</u>, 480 U.S. at 449. Therefore, since Chen has failed to satisfy his burden of proof with respect to his asylum claim, he also has not established that he is entitled to relief under the CAT or is eligible for withholding of deportation.

## CONCLUSION

Having concluded that Chen has failed to meet his burden of proof to establish qualification for asylum, withholding of removal, or protection under the CAT, we AFFIRM the BIA's decision. AFFIRMED.