United States Court of Appeals
Fifth Circuit

**F I L E D**

November 29, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No.  04-60080

LUIS GERARDO HIGAREDA ADAM,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

**Appeal from the Board of Immigration Appeals
(A78 355 868)**

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

At issue is the denial of Luis Gerardo Higareda Adam's application for asylum and withholding of removal and for relief under the Convention Against Torture (CAT).  Also at issue is whether remand is necessary because of:  the Immigration Judge's claimed failure to give full and fair consideration to all of the circumstances giving rise to Higareda's claim; errors in the

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

record; or the Board of Immigration Appeal's (BIA) summary affirmance of the IJ's decision.  **DENIED**.

I.

The following factual recitation is from Higareda's testimony before the IJ:  In 1998, Higareda, a native and citizen of Mexico, was elected Mayor of the City of Reynosa in the State of Tamaulipas.  He was politically affiliated with a Senator and with the Governor of Tamaulipas, both of whom were political opponents of the Governor-Elect, Thomas Yarrington.  In early 1999, Higareda took several actions opposed by Yarrington, including implementing a program to combat narcotics trafficking.  After taking office in February 1999, Yarrington told Higareda that he was going to "screw" him in retaliation for Higareda's opposition.

In March 1999, Yarrington ordered an illegal state audit of a public agency where Higareda served as General Manager.  As a result of the audit, criminal charges of embezzlement, abuse of authority, and falsification of documents were brought against Higareda; illegal arrest attempts followed.  Higareda was removed as Mayor of Reynosa and replaced with a Yarrington crony.  Law-enforcement programs initiated by Higareda, but opposed by Yarrington, were cancelled.

Higareda was admitted to the United States in April 2000 through a temporary visa, which expired that October.  At his deportation proceedings, Higareda admitted he had remained in the

2

United States without authorization. Higareda applied for asylum and withholding of removal and for relief under CAT.

In his asylum application, Higareda contended: he is innocent of the charges against him in Mexico; his rights were violated by the audit and criminal prosecution; the adverse actions he suffered were politically motivated; his political opponents are still in power; and he will be at risk of arrest, psychological torture, and death if he returns to Mexico. Although Higareda conceded that he has legal remedies in Mexico, he expressed fear for his safety while in jail there, pursuing those remedies.

In addition to Higareda's testimony at the hearing before the IJ, a newspaper and television reporter from Mexico testified that: as with Yarrington, the Mayor who replaced Higareda was reputed to be involved in drug trafficking; and Higareda would be killed if returned to Mexico and imprisoned. Similarly, a human rights organization representative testified that: Higareda's rights would likely not be respected if he returned to Mexico; and he is at risk of mental and physical torture and of being killed. Additionally, the National Human Rights Commission summarized in a letter to the IJ its determination that: Higareda was "wronged"; and his human rights had been violated by the Tamaulipas Attorney General, a criminal district court judge, the Reynosa City Council, and the Tamaulipas State Congress.

After the hearing, the IJ denied Higareda's application, finding that, although Higareda and his witnesses were credible, Higareda wished to avoid *criminal prosecution, not the requisite political persecution*. Higareda appealed the IJ's decision to the BIA, which summarily affirmed the IJ's decision without opinion.

## II.

"Although this Court generally reviews decisions of the BIA, not immigration judges, it may review an immigration judge's decision when, as here, the BIA affirms without additional explanation." *Moin v. Ashcroft*, 335 F.3d 415, 418 (5th Cir. 2003). When doing so, the IJ's decision must be upheld "if there is no error of law and if reasonable, substantial, and probative evidence on the record, considered as a whole, supports the decision's factual findings". *Id.* Under this standard, the alien must demonstrate that the "evidence was so compelling that no reasonable factfinder could conclude against it", *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994); and, in this regard, an IJ's findings on credibility are afforded "great deference", *see Efe v. Ashcroft*, 293 F.3d 899, 905 (5th Cir. 2002).

## A.

### 1.

Higareda claims that the IJ erred in finding his criminal prosecution did not equate with political persecution, thus denying his application for asylum and withholding of departure. For

4

political asylum, Higareda must prove that "a reasonable person in the [same] circumstances would fear persecution". **Rojas v. INS**, 937 F.2d 186, 189 (5th Cir. 1991) (noting that "[i]t is sufficient under this standard to show that persecution is a reasonable possibility"). Under his claim for withholding of departure, however, Higareda must prove "a clear probability of persecution". **Id.** Because his asylum request presents a lesser burden, we will examine it first. **Id.** (explaining that, under "these standards, it is easier to qualify for asylum than for a withholding of deportation").

The Attorney General has discretion to grant asylum to a refugee under § 208(a) of the Immigration and Nationality Act (INA). 8 U.S.C. § 1158(b)(1) (2000). A refugee is an alien "who is unable or unwilling to return to ... [his] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or *political opinion*". **Id**. § 1101(a)(42) (emphasis added). The alien bears the burden of showing a causal connection between the persecution and one of the five enumerated grounds. *See* **INS v. Elias-Zacarias**, 502 U.S. 478, 482 (1992). The INA does not define persecution, but the term has been construed to require showing "harm or suffering will be inflicted upon [the alien] in order to punish [the alien] for possessing a belief or characteristic a persecutor sought to

overcome". ***Faddoul v. INS***, 37 F.3d 185, 188 (5th Cir. 1994) (internal citations and quotation marks omitted).

Higareda claimed he came to the United States because he feared for his life; he also feared he would be incarcerated if he returned to Mexico and for his safety while in jail. The IJ found, however, that Higareda was "fleeing because of prosecution and not persecution". Reasoning that "[p]rosecution for violation of the law of general applicability is not persecution unless the punishment is threatened for an invidious reason", the IJ found that, in this instance, "[c]riminal prosecution does not constitute persecution". Because Higareda had not availed himself of the legal means available for defending himself in Mexico, the IJ concluded that Higareda merely fears "prosecut[ion] for the alleged crime that he is being accused of ... [which] does not lead to persecution but prosecution".

As stated by the IJ, criminal prosecution can equate with persecution. ***Lin v. INS***, 238 F.3d 239, 244 (3d Cir. 2001) (summarizing the circuit's precedent that fear of prosecution may constitute persecution "if the prosecution is motivated by one of the enumerated factors, such as political opinion, and if the punishment under the law is sufficiently serious to constitute persecution"); ***Abdel-Masieh v. INS***, 73 F.3d 579, 584 (5th Cir. 1996) ("While punishment of criminal conduct in itself is not persecution, where that punishment ... is 'excessive or

6

arbitrary'[] and is motivated by one of the specified grounds, such punishment would constitute persecution under the Act.") (internal citation and quotation marks omitted).

Higareda has not demonstrated a well-founded fear of persecution, but rather appears to be fleeing from criminal prosecution. Therefore, Higareda has *not* shown "the evidence [is] so compelling that no reasonable factfinder could conclude against it". *Efe*, 293 F.3d at 905.

2.

Because Higareda fails to satisfy his burden of proving a well-founded fear of persecution in seeking asylum, he fails to prove the higher "clear probability standard" in seeking withholding of removal. *Castillo-Rodriguez v. INS*, 929 F.2d 181, 185 (5th Cir. 1991) ("In affirming the Board's finding that [Petitioner] is ineligible for asylum under section 208(a), we necessarily conclude that he is ineligible for withholding of deportation as well.").

3.

To obtain relief under CAT, Higareda must prove "that it is more likely than not that he ... would be tortured if removed to [Mexico]". 8 C.F.R. § 208.16(c)(2) (2005). Although Higareda's ineligibility for asylum does not necessarily preclude finding eligibility for protection under CAT, the evidence offered by Higareda falls far short of the high bar to obtain such relief,

7

especially considering that Higareda's CAT claim was directly related to his asylum claim. *See* **Farah v. Ashcroft**, 348 F.3d 1153, 1156-57 (9th Cir. 2003); *see also* **Roy v. Ashcroft**, 389 F.3d 132, 140 (5th Cir. 2004) ("The CAT standard for relief does not require persecution, but the higher bar of torture.") (internal citation and quotation marks omitted).

To support his CAT claim, Higareda relies again on reports offered to the IJ, which state that the practice of torture still exists in Mexico. That such practice may exist in Mexico does *not* prove that it is more likely than not that Higareda will be tortured if returned there. Higareda fails to show that "the evidence is so compelling that no reasonable fact finder could fail to find [him] eligible for CAT relief". **Id.**

B.

1.

Higareda claims that remand is necessary because the IJ did not give full and fair consideration to all of the circumstances giving rise to Higareda's claims. The IJ's decision, however, reflects a thorough determination based on a complete review of the record evidence. Further, as we have stated concerning the BIA, the IJ had no duty "to write an exegesis on every contention. What is required is merely that [he] consider the issues raised, and announce [his] decision in terms sufficient to enable a reviewing court to perceive that [he] has heard and thought and not merely

8

reacted". *Efe*, 293 F.3d at 908 (internal citation and quotation marks omitted).

## 2.

Higareda also contends that remand is necessary to correct errors in the record. Although there do appear to be numerous errors in the transcript, the parties do not substantially disagree regarding the underlying facts; and Higareda has not shown that the inaccuracies of the transcript have prejudiced him. *See* *United States v. Neal*, 27 F.3d 1035, 1044 (5th Cir. 1994), *cert. denied*, 513 U.S. 1179 (1995).

## 3.

Finally, Higareda claims the BIA erred in employing summary affirmance procedures. *See* 8 C.F.R. § 1003.1(a)(7)(ii) (2004) (allowing a single member of the BIA to affirm the IJ's decision, without opinion, if the member determines that the IJ reached the correct result; that any errors were harmless or nonmaterial; and that: "the issue on appeal is squarely controlled by existing Board or federal court precedent"; or "the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted"). Because the IJ's decision is supported by substantial evidence, remand for additional review by the BIA is *not* required. *See* *Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 662-63 (5th Cir. 2003).

9

III.

For the foregoing reasons, the petition for review is

*DENIED.*