# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 7, 2008

Charles R. Fulbruge III
Clerk

No. 06-61118
Summary Calendar

ANISHA RAJA BALI DHULASANIYA,

Petitioner,

v.

MICHAEL B. MUKASEY, U.S. Attorney General,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals
BIA No. A95-966-101

Before HIGGINBOTHAM, STEWART, and ELROD, Circuit Judges.

PER CURIAM:[*]

Petitioner Anisha Raja Bali Dhulasaniya applied for asylum before an immigration judge (IJ) and failed. She appealed to the Board of Immigration Appeals (BIA) and lost. She now seeks review of the BIA's order in this Court.

Dhulasaniya, a native and citizen of India, entered the United States without being legally admitted or paroled. She was therefore declared subject to removal pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act. Upon appearing before an immigration judge as ordered, Dhulasaniya, alleging

---

[*] Pursuant to Fifth Circuit Rule 47.5, the Court has determined that this order should not be published and is not precedent except under the limited circumstances set forth in Rule 47.5.4.

she suffered persecution in India on account of being a Muslim, applied for asylum under 8 C.F.R. § 1208.13(b)(1), withholding of removal under 8 C.F.R. § 208.16(b), and relief under the Convention Against Torture (CAT), applied domestically through 8 C.F.R. § 208.16(c).

As evidence of her entitlement to asylum, Dhulasaniya alleged before the IJ various incidents of past persecution, two of which are of particular importance to this appeal. First, Dhulasanyia claimed that on March 4, 2002, a group of approximately 100 Hindus attacked her largely Muslim colony, and while there, beat and tortured her. [R. at 206]. Second, Dhulasaniya claimed that, a few weeks after the March 4th incident, "Hindu parties" and police allegedly abducted Dhulasaniya, confined her for six days, and admonished her to convert to Hinduism. [R. at 207]. Dhulasaniya predicted that she would continue to suffer such abuse should she return to India. [R. at 206].

Concluding that Dhulasaniya's accounts of the aforementioned incidents contained significant inconsistencies, the IJ determined that her testimony was unreliable, denied Dhulasaniya relief on all grounds asserted, and ordered her removal. Focusing on the same inconsistencies, the BIA affirmed, concluding that the IJ's adverse credibility determination was not clearly erroneous. Dhulashaniya filed a timely petition for review in this Court. See 8 U.S.C. § 1252(b)(1).

I.

In reviewing an order of the BIA, this Court will consider the underlying decision of the IJ only if it "ha[d] some impact on the BIA's decision." Mikhael v. INS, 115 F.3d 299, 302 (5th Cir. 1997). Because the BIA's decision rested on its conclusion that the IJ's credibility finding was not clearly erroneous, we must consider that underlying finding.

As a preliminary matter, the government argues that this Court lacks jurisdiction to hear this matter due to Dhulasaniya's failure to exhaust her administrative remedies.

Section 106(c) of the Immigration and Naturalization Act, codified as 8 U.S.C. § 1252(d)(1), provides that courts may not review final orders of removal unless the alien "has exhausted all administrative remedies available to the alien as of right . . . ." "Because it is statutorily mandated, an alien's failure to exhaust his administrative remedies serves as a jurisdictional bar to our consideration" of his petition. Wang v. Ashcroft, 260 F.3d 448, 452 (5th Cir. 2001) (citing Townsend v. INS, 799 F.2d 179, 181 (5th Cir. 1986)).

Dhulasaniya's failure to exhaust, according to the government, arises from her failure to challenge the IJ's adverse credibility determination before the BIA. As the argument goes, because the IJ's "adverse credibility determination was the fulcrum of the denial of relief and protection," Dhulasaniya's failure to attack that "fulcrum" on administrative appeal deprives this Court of jurisdiction with respect to that issue. [Brief at 14]. Although this reasoning is supported by case law, see, e.g., Roy v. Ashcroft, 389 F.3d 132, 137 (5th Cir. 2004), the Court disagrees with its factual premise: the BIA interpreted Dhulasaniya's argument to be that "the Immigration Judge erred in his adverse credibility finding." [R. at 6]. The BIA then disagreed, concluding that the IJ's finding was not clearly erroneous. We read this statement as confirmation that Dhulasaniya in fact challenged the IJ's credibility determination on administrative appeal, and that the BIA squarely disposed of that challenge, rendering it eligible for consideration by this Court.

The government further argues that Dhulasanyia has waived any challenge to the IJ's credibility determination due to her failure to attack that determination in her appellate brief. To be sure, few are the number of express references in Dhulasaniya's brief to the IJ's credibility finding. The entire thrust of Dhulasanyia's brief, however, is her contention that she, with her testimony, established the requisites for relief. It follows that Dhulasaniya is, before this Court, attacking the IJ's and BIA's conclusions to the contrary, conclusions based on adverse credibility findings.

Having decided that this Court has jurisdiction to entertain Dhulasaniya's petition, and that the viability of the lower tribunals' credibility findings is an issue properly before us, we proceed to the merits.

The provisions under which Dhulasaniya has sought relief all have in common a requirement that an applicant demonstrate either past persecution, or a well-grounded fear of future persecution. See generally 8 C.F.R. §§ 1208.13, 1208.16. In attempting to prove her eligibility under these provisions, Dhulasaniya relied entirely on her accounts of past persecution. Thus, her success depended on the degree to which the IJ found those accounts credible. Indeed, the IJ, as the factfinder, has the "duty to make determinations based on the credibility of . . . witnesses," Chun v. INS, 40 F.3d 76, 78 (5th Cir. 1994), and this court gives great deference to those determinations, Efe v. Ashcroft, 293 F.3d 899, 905 (5th Cir. 2002). Thus, when an IJ's credibility determination is based on "a reasonable interpretation of the record and therefore supported by substantial evidence," it will be upheld. Chun, 40 F.3d at 79.

On two separate occasions, Dhulasaniya provided an account of each of the two aforementioned incidents of persecution: once in her written application for relief, and again orally before the IJ. In denying Dhulasaniya relief, the IJ and BIA focused on several major inconsistencies between her written and oral accounts. For example, with regard to the March 4, 2002 incident, Dhulasaniya, in her asylum application, stated that her home was set aflame, and that she was severely beaten and tortured by a group of approximately 100 Hindus. [R. at 206]. Her application did not mention that local police had either facilitated or encouraged the attack. By contrast, during oral examination, Dhulasaniya, when asked whether the mob burned her home, answered "[n]ot ours personally, [but rather] the houses around us. . . . We were in the midst of Hindu houses so we only got looted." [R. at 131]. Interestingly, later in her testimony, when pressed on the contradiction, Dhulasaniya changed her story yet again, testifying that after her home was looted, it was set aflame. [R. at 161].

4

Dhulasaniya also alleged orally that the mob physically attacked her father and attempted to rape her mother, two significant details absent in her written application. [R. at 161-62]. Also missing from Dhulasaniya's application was her allegation, stated orally, that local police were present during the attack and encouraged the beatings. [R. at 133].

With regard to the second major incident, Dhulasaniya asserted in her application that she was abducted by Hindus for six days but made no mention of any physical violence. [R. at 207]. By contrast, Dhulasaniya testified orally that her abductors attempted to rape her. [R. at 134].

Dhulasaniya presented no corroborating evidence that might lend credence to her accounts of persecution. Given the great deference this Court owes to administrative credibility determinations, see Efe, 293 F.3d at 905, we cannot say that the BIA's affirmance of the IJ's decision rested on an "unreasonable interpretation of the record," Chun, 40 F.3d at 79.

Dhulasaniya does invoke one relevant provision which exempts an applicant from having to prove a reasonable possibility of future persecution by way of credible accounts of past persecution; 8 C.F.R. § 208.13(b)(2)(iii)(A) provides that:

> [i]n evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the asylum officer or immigration judge shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if . . . [t]he applicant establishes that there is a pattern or practice in his or her country . . . of persecution of a group of persons similarly situated to the applicant on account of . . . religion . . . .

As the text of the provision makes clear, Dhulasaniya's success in invoking it does not depend on her ability to establish past persecution. Therefore, the IJ's adverse credibility determination is irrelevant for purposes of the above paragraph. Dhulasaniya, however, overlooks 8 C.F.R. § 208.13(b)(3)(i), which provides that "[i]n cases in which the applicant has not established past

persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecution is by a government or is government-sponsored."

In her application, Dhulasaniya claimed persecution by the Hindu majority in a particular geographic region, rather than by the Indian national government. The IJ concluded that Dhulasaniya failed to establish "that her entire country is no longer safe, [and] that her problems are not just localized . . . ." [R. at 68]. We cannot say that such a finding can follow only from an unreasonable reading of the record. Dhulasaniya testified that she never sought sanctuary in another region of India. [R. at 144]. Indeed, Dhulasaniya briefly resided in Mata, another location within her home region; when asked whether she experienced problems there, she responded "[n]o, not at all." Id. Thus, the IJ's finding with respect to the feasability of relocation withstands substantial evidence review.

Finding no legal or factual error in the BIA's order, we AFFIRM.