**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-60365

ZHI QUAN LIU

Petitioner - Appellant

v.

ERIC HOLDER

Respondent - Appellee

Petition for Review of an Order
of the Board of Immigration Appeals

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Zhi Quan Liu petitions for review of an order of the Board of Immigration Appeals denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. After a hearing, the immigration judge issued an order denying Liu's asylum and withholding applications. The BIA affirmed but remanded for the IJ to consider whether Liu was entitled to relief under the Convention Against Torture. On remand, a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

different IJ conducted another hearing and denied Liu's application for CAT. The BIA affirmed without opinion and Liu was ordered removed.

Liu filed a petition for review of the BIA's order. His pro se brief asserts that he seeks review of only the denial of his CAT claim; however, his arguments include references to the standards applicable in asylum and withholding cases. We read Liu's brief as challenging the denial of all three claims. And because the first BIA decision denying Liu's asylum and withholding applications and remanding for consideration of his CAT claim did not include a final order of removal, Liu could not have petitioned for review of any of the claims until after the BIA issued a final order.[1] In denying Liu's CAT claim, the BIA issued a final agency determination ordering removal and we now review the denial of Liu's asylum, withholding, and CAT petitions.

I

Liu, a citizen of the People's Republic of China, entered the United States in 1993 without inspection. Shortly thereafter, Liu filed an asylum application, but used the name Zhong Xian Guo and a fictitious birth date, both allegedly given to him by those who smuggled him into the United States. Liu never received notification from the government regarding this application, possibly because he moved apartments or because of the name discrepancy. In 2002, the former Immigration and Naturalization Service issued a notice to appear to Liu, charging him with removability. Liu then filed another application for asylum and withholding of removal, this time in his own name.

According to his 2002 application and his testimony at the hearing before the IJ, Liu was part of a Christian church in his village in Fujian Province, China. He asserted that church meetings were held at his parents' house, where he lived, and that on July 15, 1992, during one of these meetings, police arrived

---

[1] 8 U.S.C. § 1252(a)(5).

at the house and arrested him. He was detained for fifteen days. During the detention he claims to have been interrogated for periods of hours while being forced to kneel. He was asked the names of church leaders and to confess to illegally gathering and harming government security. When he refused to answer he was beaten. Eventually he confessed to harming government security and was released on July 30 with the warning to stop the religious gatherings. The gatherings continued, though, and Liu testified that on November 11, 1992 local police again stormed his house during a church gathering. Liu escaped out the back door, fled to his uncle's house, and stayed there and with various friends until he paid a smuggler $30,000 to take him to the United States. He has remained in contact with his parents who have since told him that the Chinese government sentenced him to three years imprisonment based on his confession.

After considering this evidence, the IJ denied Liu's application for asylum and withholding because Liu was not credible. The judge found Liu's credibility impugned by the 1994 asylum application that contained a false name, birth date, and information. The judge also found it implausible that, if Liu's story were true, his mother would be able to continue her active participation in the church without any government interference. The order noted minor inconsistencies in the testimony of Liu and his common-law wife as to where his wife's children live and whether he lives and works more often in Houston or Corpus Christi. And, finally, the IJ questioned why Liu was living with his common-law wife without a ceremonial marriage if Liu was in fact an ardent Christian. On these grounds, the IJ found that Liu failed to establish credible support for asylum or withholding. In the alternative, the judge found Liu did not demonstrate a clear probability of persecution because his mother continues to practice the same religion without persecution.

At his CAT hearing, Liu offered similar testimony. Liu also offered additional evidence not offered in his asylum and withholding hearing including medical records of treatment following his detention, photographs of the injuries he allegedly obtained from the beatings, and an affidavit from his uncle whose house he fled to after the second police raid of his home. The IJ again found that Liu was not credible, reasoning that he did not adequately explain the false information in the 1994 application and that he spoke without emotion, constantly blinked his eyes, and appeared nervous and evasive. The judge also questioned why Liu never mentioned his hospital treatment and medical records at his first hearing in 2004. For these reasons, the IJ found no credible evidence supporting the likelihood that Liu would be tortured on return to China.

II

Because the BIA affirmed the first IJ's decision on asylum and withholding based on the reasons set forth in that decision, and affirmed the second IJ's decision on CAT without opinion, the IJ decisions become the final agency determination we review on appeal.[2] Agency decisions on credibility are fact determinations: "[I]t is the factfinder's duty to make determinations based on the credibility of the witnesses."[3] Findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.[4] Under this standard, reversal is improper unless we decide "not only that the evidence supports a contrary conclusion, but also that the evidence compels it."[5]

---

[2] *Zhang v. Gonzales*, 432 F.3d 339, 343 (5th Cir. 2005); *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997).

[3] *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005) (quoting *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994)).

[4] 8 U.S.C. § 1252(b)(4)(B).

[5] *Zhao*, 404 F.3d at 306 (quoting *Chun*, 40 F.3d at 78 (internal quotations marks removed)). The new standards for evaluating witness credibility contained in the Real ID Act do not apply to the IJ's review of Liu's 2004 application because those provisions of the Real

A

Regarding Liu's asylum application, we do not have jurisdiction to review the factual finding regarding the timeliness of the application made by the IJ. Under 8 U.S.C. § 1158(a)(2)(B), an alien seeking asylum typically must demonstrate by clear and convincing evidence that he filed an application within one year of his or her arrival in the United States. Liu arrived in the United States in 1993 and his instant application was filed in 2002. However, Liu attempted to meet the time-limit requirement by relying on an application he allegedly filed in 1994 under a false name and birth date. The IJ could not determine whether the 1994 application was Liu's.

The jurisdiction-stripping provision in 8 U.S.C. § 1158 precludes our review of determinations of timeliness based on an IJ's assessment of facts and circumstances that affected the applicant's filing.[6] In the past, the provision precluded all review of an IJ's timeliness determination; however, the Real ID Act of 2005 restored this Court's jurisdiction to review constitutional claims or questions of law.[7] Although the IJ addressed the legal issue of whether Liu had any claim to an application not in his own name, its initial finding was that it could not determine whether the application was filled out, signed, and submitted by Liu. This is a factual determination on which the IJ rested and which we have no jurisdiction to review.

---

ID Act are effective only for applications filed after May 11, 2005. *See* 8 U.S.C. § 1158(b)(1)(B)(ii–iii); 8 U.S.C. § 1231(b)(3)(C) (stating that a trier of fact may determine credibility on the "totality of the circumstances" and "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim").

[6] *See Nakimbugwe v. Gonzales*, 475 F.3d 281, 284 (5th Cir. 2007).

[7] 8 U.S.C. § 1252(a)(2)(D).

B

Unlike asylum, there is no time bar for seeking withholding of removal.[8] An applicant for withholding of removal must show that "it is more likely than not" that his life or freedom would be threatened by persecution on account of one of the five categories mentioned under asylum: race, religion, nationality, membership in a particular social group, or political opinion.[9] The IJ found that Liu's testimony was not credible and could not support a withholding claim. Although the IJ decision does not state it directly, we assume that this means the IJ did not believe Liu's testimony about his church group and related arrest, detainment, and interrogation.

The primary reason for the IJ's adverse credibility finding was that Liu had filed a previous asylum application containing a false name and birth date and stating that he was persecuted for his involvement in a student movement, not for the religious reasons given in his later application. In his hearing, Liu explained that he had gone to a "travel agency" to obtain the first application, that he told them he wanted to apply for asylum based on religious reasons, that they filled out the application, and that "[t]hey asked me to sign and I just signed." He admitted that the information in the first application was false, but stated that he did not know its contents at the time. Despite this explanation, the IJ found that the false information in his first application harmed his credibility.

The IJ also found it implausible that his mother actively practices the same religion from the same house as Liu but, according to Liu, has never been arrested by the Chinese government. There are, of course, many possible reasons that Liu may have been singled out or that his mother may have

---

[8] *Zhu v. Ashcroft*, 382 F.3d 521, 528 (5th Cir. 2004).

[9] 8 C.F.R. § 208.16(b)(1).

escaped persecution. Chinese officials may have perceived Liu as the leader of the organization, or merely as someone who was likely to divulge the names of his compatriots. His mother may have held a respected position in their small community or may not have been privy to the information the government sought. These possibilities are mere conjecture on the record before this Court, but the record begs an explanation. The IJ, without seeking an explanation, concluded that it was "totally inconsistent" that Liu was arrested while his mother was not.

The remaining inconsistencies perceived by the IJ did not go to the heart of Liu's claim.[10] The IJ noticed contradiction between Liu's testimony and his common-law wife's testimony as to where his wife's two children live; whether they both live with her or whether one lives in China. It was also unclear whether Liu's permanent residence is in Houston or Corpus Christi. Finally, the IJ doubted Liu's Christianity because he lives with his common-law wife without having had a ceremonial marriage. Many of these discrepancies could easily be a result of the language barrier, which required an interpreter for both questions and answers, or Liu's minimal education, described as being at a third-grade level. As to Liu's common-law marriage, the arrangement is legal and the relationship long-standing; this seems more of a moral judgment based on the IJ's own understanding of religion than a legal determination of the credibility of Liu's testimony.

Nevertheless, we are constrained by our standard of review to conclude that the IJ's adverse credibility determination was supported by reasons derived from the record and that there is no evidence that compels us to find Liu suffered persecution on account of his religion. We do note that the substance of Liu's

---

[10] The new standards for evaluating witness credibility contained in the Real ID Act, *see* 8 U.S.C. § 1158(b)(1)(B)(ii–iii); 8 U.S.C. 1231(b)(3)(C), do not apply to this application which was filed before May 11, 2005.

testimony about his arrest, imprisonment, and interrogation contained ample detail and remained consistent from the statement in his 2002 application through his hearing. But his 1994 application containing a fabricated name, birth date, and statement interjects enough inconsistency into the paper record for us to defer to the factfinder that conducted Liu's hearing in person and found him not credible.

C

In a second order on remand from the BIA, the IJ addressed Liu's CAT claim. To obtain relief under the Convention Against Torture, an applicant must show that it is more likely than not that he would be tortured if returned to his home country.[11] The IJ denied the CAT application, again based on an adverse credibility finding.

The judge's reasons repeated many of those given in the first decision, but added remarks on Liu's demeanor and questions on why new evidence was not presented in the first hearing. We defer to the factfinder's observations of Liu's demeanor during his testimony. But we question the use of newly-admitted medical documents to characterize his testimony as contradictory with that at the first hearing. Liu explained that medical records from his treatment following his 1992 detention were not presented in the first hearing because they had only recently been located and sent from China. He also explained that he did not mention his hospital treatment at the first hearing because he was never asked about it.

We acknowledge that the failure to mention the hospital visit at the first hearing could raise the question of whether it was subsequently fabricated. But the medical records themselves corroborate the treatment, putting this concern to rest. To then use the late arrival of medical records that evidence Liu was in

---

[11] *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005); 8 C.F.R. § 208.16(c)(2).

fact treated for symptoms consistent with his account of his beatings to question the veracity of his testimony on the subject is nonsensical. The medical records substantiate the very claim that their late arrival is being used to question. It would have been better for Liu had they been produced earlier, but they are better late than never.

Nevertheless, the IJ also based its adverse credibility determination on Liu's demeanor and on his 1994 application which contained false information. Again, as with our holding regarding the IJ's first order, and based on our deferential standard of review, the record does not compel a finding that Liu was credible.

AFFIRMED.