# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2009

Charles R. Fulbruge III
Clerk

No. 09-60121
Summary Calendar

KAP LAM THANG

Petitioner

v.

ERIC H. HOLDER  JR., U.S. ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the Board of Immigration Appeals
A88 788 166

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Kap Lam Thang petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") on January 28, 2009, affirming the Immigration Judge's ("IJ") decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  For the following reasons, we now deny the petition for review.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Kap Lam Thang, a 21 year-old native and citizen of Burma, arrived in the United States in February of 2008. That same day, Thang requested political asylum and a United States immigration officer interviewed him, obtaining a recorded sworn statement. After a credible fear interview, Thang was placed in expedited removal proceedings. On April 14, 2008, Thang was served with a Notice to Appear ("NTA"), charging him with removability pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act as an immigrant who, at the time of application for admission into the United States, was not in possession of a valid entry document.

On April 28, 2008, Thang appeared before the IJ, admitting the allegations in the NTA. Thang conceded removability as charged, and submitted his application for asylum, withholding of removal, and protection under the CAT, asserting that he had been subjected to past persecution by the Burmese government and that he had a well-founded fear of future persecution if he returned to Burma.

Before the IJ, Thang testified that in February 2007, the Burmese military arrived in his village to forcibly recruit him and other young men to serve as porters carrying the army's goods and supplies. When the soldiers were ambushed by rebels during the trip, Thang claimed that he escaped and

returned to his village. Shortly thereafter, he was arrested and detained for desertion. Thang further alleged that during his week long detention, he was beaten and denied food. Although he was sentenced to hard labor, Thang testified that his parents paid a bribe to secure his release. Thang remained in his village until December of 2007. In December, Tang stated that he showed a videotape to fifteen people depicting a crackdown by the Burmese government of a protest by Buddhist monks. After word of the video spread, Thang testified that he was told he faced imminent arrest. In response to his impending arrest, Thang fled Burma for Thailand and eventually, came to the United States.

The IJ denied Thang's applications and ordered him removed to Burma. Thang appealed the IJ's decision to the BIA which affirmed the IJ's decision. He now petitions for review.

## II.

We review the BIA's denial of an application for withholding of removal and protection under CAT under the substantial evidence test. Under this standard of review, reversal is improper unless we decide "not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it." *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005) (citing *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994)) (emphasis in original). We only review orders issued by the Board. *Castillo-Rodriguez v. INS*, 929 F.2d 181, 183 (5th Cir. 1991). Ordinarily this court does not consider the rulings and findings of immigration judges

unless they impact the Board's decision. *Id.* Since the BIA adopted the IJ's findings and conclusions, we review the IJ's findings here.

In this case, the IJ denied Thang's petition for asylum finding that his claims were not sufficiently credible. The Real ID Act of 2005 allows the trier of fact to make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Adverse credibility determinations must be supported by specific and cogent reasons derived from the record. *Zhang v. Gonzalez*, 432 F.3d 339 (5th Cir. 2005).

In her opinion, the IJ listed several specific material inconsistencies between Thang's testimony, his asylum application, and his asylum and credible fear interviews. For instance, Thang testified before the IJ that he alone–and not his family– endured hardships; however, in his asylum application he indicated that his family had their goods and belongings confiscated by the military and that they were punished by authorities. Also, although Thang's application indicated that his family had been harassed for worshiping as Christians, he did not claim any religious persecution. Further, Thang testified the he worked on his family's farm after graduating the tenth grade, but he told the asylum officer that he was a student.

On appeal, Thang disputes the IJ's adverse credibility determination and maintains that the various inconsistencies addressed by the IJ were the result

of Thang's inability to understand English. Yet Thang's argument is undercut by the basic English competency he evinced in his interview with the immigration officer. During his interview, Thang answered a series of questions, showing an understanding of English; he responded competently about questions regarding his parent's names, birth dates, and places of birth.[1] Additionally, the IJ recognized that Thang passed a University Entrance Exam which included English as a subject. Record, p. 357. Accordingly, Thang's claim concerning the language barrier as a cause for the inconsistencies in his answers is without merit.

Therefore, because of the strong deference we give to the IJ's credibility findings and since nothing in the record compels a contrary conclusion, we deny review of the order of the BIA.

PETITION DENIED.

---

[1] Moreover, Thang's responses to some of the questions showed more than a basic knowledge of the English language:

Q: "Do you have any relatives living in the United States"
A: No. I have friend in Florida. Pau Deigh Lian.
Q: Where did you plan to go in the United States"
A: With Pau.
Q: When did you leave Bangkok?
A: In February. I flew into Singapore then into Mexico City, Mexico on the 23rd of February of this year.
Q: How were you able to get a visa into Mexico
A: I went to the Mexico Embassy in Bangkok and then they gave me a Mexico visa.
Q: How long was you Mexican visa valid for?
A: Thirty days, I think.

Record, pp. 330-332.